# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――

Argued December 7, 2006      Decided March 6, 2007

No. 05-5385

MARK LEE KRAMER, ET AL.,
APPELLEES

v.

ROBERT M. GATES, SECRETARY, DEPARTMENT OF DEFENSE,
APPELLANT

―――

Appeal from the United States District Court
for the District of Columbia
(No. 96cv00497)

―――

*Michael J. Ryan*, Assistant U.S. Attorney, argued the cause for appellant. On the briefs were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, *R. Craig Lawrence*, Assistant U.S. Attorney, and *Kevin K. Robitaille*, Special Assistant U.S. Attorney.

*Daniel M. Schember* argued the cause and filed the brief for appellee.

Before: BROWN and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, Senior Circuit Judge:  The five plaintiffs here are civilians who were employed as National Guard Technicians in the Department of Defense until their involuntary separation from service in 1993 and 1994.  The then-effective version of 5 U.S.C. § 3329 provided that employees such as plaintiffs who were involuntarily separated "shall, if appropriate written application is submitted within 1 year after the date of separation, be offered a position . . . not later than 6 months after the date of the application."  5 U.S.C. § 3329(b) (1992).  Specifically, such technicians were entitled to a competitive service position in the Department of Defense for which the rate of basic pay was to be "not less than the rate last received for technician service before separation."  5 U.S.C. § 3329(c)(4) (1992).

Although plaintiffs submitted timely applications, the Secretary of Defense failed to offer them appropriate positions within the statutory time limit.  In 1996 plaintiffs brought suit in district court seeking equitable relief to enforce the provisions of § 3329.  The district court in due course found that plaintiffs could bring suit in light of the partial waiver of sovereign immunity in the APA, which permits district courts to grant "relief other than money damages," 5 U.S.C. § 702, reasoning that plaintiffs sought only equitable relief that was, in the language of our cases, "not negligible in comparison with the potential monetary recovery."  See *Kramer v. Cohen*, Civ. Action No. 96-497, Memorandum Order at 4 (D.D.C. Apr. 8, 1997); *Kidwell v. Department of Army, Board for Correction of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 1995) (internal quotation marks omitted).  On the merits the court concluded that § 3329 impliedly gave plaintiffs a right of action.  *Kramer v. Secretary of Defense*, 39 F. Supp. 2d 54, 57–59 (D.D.C. 1999).  Accordingly, the court issued a

judgment ordering the defendants to change "the effective date" of each plaintiff's "competitive service appointment" to a specified date six months after the submission of their respective applications. The Secretary did not appeal.

One plaintiff (Ainslie) brought suit in the Court of Federal Claims in 2001, seeking back pay for the period from July 31, 1995 through January 7, 1996—the time between the dates of his retroactive appointment and of his actual reemployment with the Department. The Tucker Act waived sovereign immunity for the claim, 28 U.S.C. § 1491, and the cause of action rested on the Back Pay Act, 5 U.S.C. § 5596(b)(1), which affords an agency "employee" back pay to correct certain "unjustified or unwarranted personnel action[s]." The Court of Federal Claims observed that under 5 U.S.C. § 2105(a) an "employee" for purposes of Title 5 must not only have been "appointed" in the civil service (as were the five plaintiffs, per the district court's order), but must have fulfilled two additional requirements—have been (1) "engaged in the performance of a Federal function under authority of law or an Executive act" (2) while being "subject to the supervision" of a specified class of officials. Because Ainslie had not satisfied the additional requirements, the court denied his claim. *Ainslie v. United States*, 55 Fed. Cl. 103, 106–08 (2003). The Federal Circuit affirmed this denial, observing that "Ainslie seeks to erase the distinction between being appointed and being employed." *Ainslie v. United States*, 355 F.3d 1371, 1374 (Fed. Cir. 2004). Ainslie fared no better under § 3329. The Federal Circuit noted that § 3329 "contains no remedial language to recover money damages if the federal government fails to comply with the statute," *id.* at 1375, and accordingly rejected the idea that it provided an implied right to such recovery.

In light of Ainslie's lack of success before the Court of Federal Claims and the Federal Circuit, all of the plaintiffs

returned to the district court in 2005 seeking clarification of its 1999 order. Under Federal Rule of Civil Procedure 60(b)(6), "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . any . . . reason justifying relief from the operation of the judgment." The court granted plaintiffs' motion and said:

> Insofar as the court's previous order was interpreted to provide for only a change in the date of "appointment" rather than the date of "employment," the court is now stating with "redundant clarity" that it intends for plaintiffs to be deemed employed as well as appointed on the dates they would have been employed had defendant not violated 5 U.S.C. § 3329.

*Kramer v. Rumsfeld*, Civ. Action No. 96-00497, Order at 2 (D.D.C. Aug. 9, 2005).

Because relief under Rule 60(b)(6) is appropriate only in "extraordinary circumstances," *Ackermann v. United States*, 340 U.S. 193, 199 (1950), and such circumstances were lacking with respect to all plaintiffs except Fangerow (in regard to a portion of the relief granted him), we vacate the district court's order except for the relief afforded Fangerow that falls properly within Rule 60(b)(6).

* * *

With one exception unique to plaintiff Fangerow, we resolve this case on the ground that the district court improperly exercised its authority to reopen a final judgment and award relief under Rule 60(b)(6). Consequently, we need not reach the larger jurisdictional question—whether the district court's 2005 order was in essence an award of money damages in contravention of 5 U.S.C. § 702. Before we can

reach this conclusion, though, we must answer two antecedent questions. First, can a federal court, consistent with *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83 (1998), resolve a case on procedural grounds before addressing a *statutory* obstacle to subject-matter jurisdiction? Second, since the Secretary at no point has objected to the district court's authority to grant a Rule 60(b)(6) motion in these circumstances, may we raise the issue on our own? The answer is yes to both questions.

*Steel Company* makes clear that jurisdiction is a "threshold matter," *id*. at 94, and that a "federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review," *id*. at 95 (internal quotation marks omitted). We have from the outset understood the decision's principal concern to be assurance that courts exercise their "power to declare the law," *id*. at 94, only if possessed of jurisdiction. *In re Papandreou*, 139 F.3d 247, 255 (D.C. Cir. 1998) ("a court that dismisses on other non-merits grounds . . ., before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers principles underlying . . . *Steel Company*."). See also *Galvan v. Federal Prison Industries, Inc.*, 199 F.3d 461, 463 (D.C. Cir. 1999); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999). We have considerable doubt whether an interpretation of the limits of Rule 60(b)(6) qualifies as an exercise of a court's law-declaring power as *Steel Company* used the concept, as the scope of Rule 60(b)(6) is far removed from any effect on primary conduct. Compare *Hanna v. Plumer*, 380 U.S. 460, 475 (1965) (Harlan, J., concurring) (classifying rules affecting "primary decisions respecting human conduct" as substantive for purposes of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)).

But even if a reading of Rule 60(b)(6) should be the sort of law-declaring activity that courts must avoid until resolving the issues made primary by *Steel Company*, those primary issues related to Article III jurisdiction, not, as here, to a statutory limit (even one classified as jurisdictional for many purposes). *Steel Company* explicitly recognized the propriety of addressing the merits where doing so made it possible to avoid a doubtful issue of *statutory* jurisdiction; the case excluded such jurisdiction from the rule of absolute priority that it established for Article III jurisdiction. See *Steel Company*, 523 U.S. at 96–97 & n.2. Because there is no Article III issue here, but only an uncertainty as to the scope of the waiver in 5 U.S.C. § 702, *Steel Company* poses no bar to considering the application of Rule 60(b)(6).

Next, we must address whether we may resolve this case on the impropriety of Rule 60(b)(6) relief when the appellant failed to raise such an objection. Ordinarily we do not consider non-jurisdictional issues that litigants didn't raise and that the district court didn't resolve. *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004). But we have authority to raise issues on our own motion when "the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. TDC Management Corp.*, 288 F.3d 421, 425 (D.C. Cir. 2002) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). As we explain in greater detail below, clear Supreme Court and circuit precedent rendered Rule 60(b)(6) relief inappropriate (except as to the portions of the decree unique to Fangerow).

The Supreme Court has noted that courts should grant Rule 60(b)(6) motions only in "extraordinary circumstances." *Ackermann*, 340 U.S. at 199. See also *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). We have similarly observed that Rule 60(b)(6) "should be only sparingly used" and may not

"be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980). For instance, the Supreme Court has held that "extraordinary circumstances" are not present when in hindsight it appears certain that an appeal, which was not taken, would have been successful, *Ackermann*, 340 U.S. at 197–99, or when there has been an intervening change in case law, *Gonzalez*, 545 U.S. at 536–38; *Agostini v. Felton*, 521 U.S. 203, 239 (1997). The Court has underscored the stringency of the Rule by holding that the catch-all provision, Rule 60(b)(6), is mutually exclusive with the grounds for relief in the other provisions of Rule 60(b), which include excusable neglect, newly discovered evidence, and fraud, all three of which require that the motion be brought within one year of the judgment from which relief is sought. See *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 393 (1993). In short, plaintiffs must clear a very high bar to obtain relief under Rule 60(b)(6). Here, plaintiffs' 1999 complaint sought only "appointment," not "employment," despite an array of cases drawing a critical distinction between the two. Plaintiffs have failed to identify any reason why they could not have requested "employment" at the outset. Although the failure to request an order of "employment" here may not have been strategic in the strictest sense of the term, it was clearly a litigation choice that "turn[ed] out to be improvident" and one from which we cannot rescue the plaintiffs. The case law makes clear that Rule 60(b)(6) is not an opportunity for unsuccessful litigants to take a mulligan.

For purposes of plaintiffs' hoped-for recovery under the Back Pay Act the retroactive "appointment" they initially sought could not possibly have constituted "employment." The Back Pay Act defines an "employee" as someone who has been appointed to the civil service, engaged in the

performance of a federal function, and done so under the supervision of an appropriate appointing authority, as defined by the statute. 5 U.S.C. § 2105(a). The difference between "employment" and "appointment" is more than semantic. Someone who has received appointment might "never achieve the status of employee," *Ainslie*, 355 F.3d at 1374 (quoting *McCarley v. Merit Systems Protection Board*, 757 F.2d 278, 280 (Fed. Cir. 1985)). Like the Federal Circuit, we have long recognized the distinction between the two concepts. See, e.g., *National Treasury Employees Union v. Reagan*, 663 F.2d 239, 246 (D.C. Cir. 1981).

Further, although we need not resolve the point, plaintiffs' omission of any request for an order declaring that they had met the other two criteria for classification as an "employee" under 5 U.S.C. § 2105(a) may well have been strategic. It may have been designed *either* to obscure their goal of compensation under the Back Pay Act (and thus to enhance their argument that the relief sought in district court was "not negligible in comparison with the potential monetary recovery," *Kidwell*, 56 F.3d at 284 (internal quotation marks omitted)), *or* to divert attention from their apparent absence of any intent to make up for the work they would have performed had they actually been "engaged in the performance of a Federal function," 5 U.S.C. § 2105(a)(2), during the disputed periods. In any event, as the need to seek this classification was entirely obvious from the outset, there was no occasion to use Rule 60(b)(6) to fill the gap retroactively.

The portions of the district court's Rule 60(b)(6) order unique to Fangerow pose a different issue. The court ordered the Secretary to offer Fangerow an appropriate "permanent, non-term appointment" and further ordered that the Secretary "shall not condition plaintiff's acceptance of the appointment upon repayment of his early retirement incentive payment,

and plaintiff shall not be required to repay that payment to the government." *Kramer v. Rumsfeld*, Civ. Action No. 96-00497, Order at 3 (D.D.C. Aug. 9, 2005).

This element of the order (rejection of the government's purported condition) rested on a peculiarity of Fangerow's case that plaintiffs' counsel explained in seeking Rule 60(b)(6) relief. As had the other plaintiffs, Fangerow received an offer of appointment based on the district court's 1999 order. But "defendant informed plaintiff Fangerow that if defendant were to offer and Fangerow were to accept the offer required by . . . the Court's [1999] judgment, defendant would make Fangerow's appointment a four-year term appointment. Defendant then said that term appointees are not eligible for early retirement incentive payments and that, because Fangerow previously had accepted a $25,000 early retirement incentive, he would have to return the $25,000 to the government in order to receive the relief the Court had ordered." Memorandum in Support of Plaintiffs' Motion at 5 n.2, *Kramer v. Secretary of Defense*, Civ. Action No. 96-00497 (D.D.C. Aug. 9, 2005).

These are extraordinary circumstances that justify relief under Rule 60(b)(6). Fangerow had independently received an early retirement incentive and, later, a court-ordered offer of appointment. But the Secretary indicated that he would only conditionally comply with the district court's order—i.e., only if Fangerow forfeited the early retirement incentive. If a plaintiff receives a judgment, the liable party cannot normally attach conditions to its fulfillment of the judgment; otherwise, parties could willfully flout a court's legitimate authority. Here, so far as appears, Fangerow had no reason to think that the government would try to condition its compliance with the initial court order. Rule 60(b)(6) was thus an appropriate avenue for him to seek and the court to grant clarification that the offer of appointment was indeed independent of any

earlier remuneration or incentive that Fangerow had received. (We express no opinion, however, on the merits of the modification, which the government does not challenge.) To the extent that the pertinent segments of the 2005 order (the first two sentences of paragraph 5) merely resolve this newly arising problem, the district court properly exercised its authority under Rule 60(b)(6). Furthermore, there can be no jurisdictional objection to the court's authority to issue the clarification, as the court granted no additional relief but simply instructed the Secretary that he must unconditionally abide by the court's 1999 order. As noted above, however, the use of Rule 60(b)(6) to award Fangerow retroactive "employment" was outside the legitimate use of the Rule.

* * *

The district court's 2005 order is, except with respect to the first two sentences of paragraph 5 (relating to plaintiff Fangerow's early retirement incentive), hereby vacated as improper under Federal Rule of Civil Procedure 60(b)(6); the order is affirmed as to the first two sentences of paragraph 5.

*So ordered.*