HAYNES, Circuit Judge,
dissenting:
This case is a quintessential example of the maxim “Bad facts make bad law.” The district court was presented with the unenviable task of addressing perceived wrongdoing by both sides: one which manufactured and sold defective shingles and one which waited many years to effectuate the remedy given it. Concluding that two wrongs have not been made right here, I respectfully dissent.

Rule 60(b)(6)

The majority upholds the district court’s ruling on the grounds of Rule 60(b)(6), noting the deferential review standard of “abuse of discretion.” Yet a review of the district court’s opinion regarding Rule 60(b)(6) leaves little to which to give such deference. Indeed, the district court devotes only two sentences to this point.[1] No facts were found to which we would apply the deferential “clearly erroneous” standard. Indeed, no evidence of any sort was presented in support of the motion.[2] The only “fact” upon which the district court’s ruling rests is the passage of time. I then turn to the heart of the matter: whether the district court correctly applied the law — a question on which no appellate deference is due.
Rule 60(b)(6) is a “catchall” provision, “ ‘a residual clause used to cover unforeseen contingencies; that is, it is a means for accomplishing justice in exceptional circumstances.’ ” Steverson v. GlobalSantaFe Corp., 508 F.3d 300, 303 (5th Cir.2007) (quoting Stipelcovich v. Sand Dollar Marine, Inc., 805 F.2d 599, 604-05 (5th Cir.1986)). It is well-settled that Rule 60(b), and particularly subsection (6), may be applied only in extraordinary cases. See, e.g., Gonzalez v. Crosby, 545 U.S. 524, 536-37, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005); Ackermann v. United States, 340 U.S. 193, 199, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Such extreme circumstances sometimes have been found in default judgment cases and the like. See Seven *516 Elves, Inc. v. Eskenazi, 635 F.2d 396, 402-03 (5th Cir. Unit A 1981).
Turning to the case in question, the district court’s brief citation of legal authorities was correct as far as it went. It quoted the following sentence from our opinion in Maddox v. Runyon, 139 F.3d 1017, 1020 (5th Cir.1998) (quoting Harrell v. DCS Equip. Leasing Corp., 951 F.2d 1453, 1458 (5th Cir.1992)): “ ‘The broad language of Fed.R.Civ.P. 60(b)(6) provides the court ample power to vacate judgments whenever such action is appropriate to accomplish justice.’ ” Maddox, while containing this broad quote, did not authorize a district court’s wholesale disregard of a jury verdict upon which judgment was entered. That case actually dealt with a motion for reconsideration of an interlocutory order partially denying a motion to dismiss for failure to state a claim. 139 F.3d at 1019-20. Harrell, upon which Maddox relied, was a case where the party against whom a default judgment was requested to be enforced was allowed to set aside the default.[3] 951 F.2d at 1459. In L.M. Leathers’ Sons v. Goldman, 252 F.2d 188 (6th Cir.1958), upon which Shakertown relies, the court affirmed a district court’s setting aside of a consent judgment and setting the matter for trial.
Neither the seasoned district judge, the parties in their briefs, nor my esteemed colleagues cite or point to any authority for the complete setting aside of a judgment based upon a fully-litigated jury verdict eight years after it was affirmed with no possibility of alternative relief and upon no submission of evidence. None of the cases upon which Shakertown, the district court and the majority rely involved judgments upon a jury verdict where the jury winner becomes the Rule 60 loser without hope of any future recovery. Courts have used Rule 60(b)(6) to modify judgments to reform unlawful or inconsistent jury verdicts, see, e.g., Aczel v. Labonia, 584 F.3d 52, 61-62 (2d Cir.2009), to clarify disputed judgments, see, e.g., Kramer v. Gates, 481 F.3d 788, 793 (D.C.Cir.2007), to remedy violations of 28 U.S.C. § 455, Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864-65, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), and to vacate default judgments, Harrell, 951 F.2d at 1459, but never to simply vacate a money judgment based on a jury verdict where the result is not a new trial. Rule 60(b)(6) is applied more liberally in the contexts previously applied precisely because the result is to allow a trial to occur. See id. (“This court applies Rule 60(b) ‘most liberally to judgments in default ... [because] ... truncated proceedings of this sort are not favored.’ ”) (quoting Seven Elves, 635 F.2d at 403); see also Ackermann, 340 U.S. at 202, 71 S.Ct. 209. It follows that the greatest degree of caution in applying Rule 60(b)(6) is called for where the conse *517 quence, as here, is to deprive the parties of the results of an actively-litigated jury trial. Such caution was insufficiently exercised here: the district court heard no evidence before rendering its decision. In short, I have been unable to locate any case allowing the relief provided here in a similar situation to this case. The result reached by the majority, using the language of the majority, is certainly “fundamentally unjust.”
Indeed, given that there is no precedent for this action under Rule 60(b)(6), I looked at analogous “delay-based” theories to see if they support the majority’s conclusion. Statute of limitations is of no help to Shakertown, as Louisiana law, like many other states, provides ten years to collect a money judgment. La. Civ.Code ANN. art. 3501 (1994); see also Andrews v. Roadway Express Inc., 478 F.3d 565, 568 (5th Cir.2006) (holding that, pursuant to Federal Rule of Civil Procedure 69(a), state law governs the period of time for which a federal judgment is enforceable unless a specific federal statute applies). Laches — the equitable analog to the statute of limitations — seems the most analogous doctrine to that applied by the district court and the majority opinion. Laches requires delay and undue prejudice to the opposing party. Johnson v. Crourn Enters., 398 F.3d 339, 344 (5th Cir.2005) (“To establish that a cause of action is barred by laches, the defendant must show (1) a delay in asserting the right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the defendant.” (quotation omitted)). While we certainly have delay here, we are sorely lacking in evidence of prejudice to Shakertown, much less undue prejudice. Cf. id. (“All that [the appel-lees] argue is that [the appellant] waited too long [to file]. This argument does not satisfy their burden.”). Crucially, Shaker-town offered not a shred of proof that the value of the shingles, if promptly removed in 2000 immediately following our original affirmance, was greater than the value of the shingles when removed in 2008;[4] that is, Shakertown offered no evidence that it actually suffered any harm or loss of value from the delay.[5]
The majority opinion suggests that Rule 60(b)(6) relief can be based upon the alleged inequity in Lindy’s retaining of the “benefit” of the shingles for eight years after our original affirmance. Even there, however, no evidence was presented that such a “benefit” was the same or more than the amount of the judgment in question; nor was there any consideration of the costs expended by Lindy over the years to repair the shingles in order to gain any such “benefit.” Thus, the district court, without any evidence or hearing, essentially applied an offset to the jury verdict ten years after it was announced. The amount of the effective offset, moreover, is in the entire amount oí the verdict, a conclusion that is simply without any evidentiary support in the record.
*518 The judgment in question is silent as to any time period for return. In discussing the judgment, the district court referenced Louisiana law of contracts not federal (or state) law of judgments. Construction of a federal judgment is governed by federal law of judgments, even if the underlying case involved state law as the rule of decision. See, e.g., 11 ChaRles Alan Wright & Arthur R. Miller, Federal Practice and Prooedure § 2858 (2d ed. 1995) (“The grounds and the procedure for setting aside a federal judgment are entirely a matter of federal law, on which state law may be disregarded”). No evidence was presented that a time period could not have been included in the original judgment. Federal law requires judgments to be interpreted as written. See, e.g., Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 148,108 S.Ct. 1684,100 L.Ed.2d 127 (1988) (interpreting a district court’s injunction order by considering “what the earlier federal order actually said” rather than “permit[ting] the District Court to render a post hoc judgment as to what the order was intended to say”). If a term is not contained in a judgment, it should not be lightly added some eight years later to the detriment of the party that won a hard-fought jury verdict. Rule 60(b)(6) is not the appropriate mechanism for correcting “a point obvious on the face of the judgment [that] was [neither] raised by motion to amend under Rule 59(e), nor raised on appeal,” Scola v. Boat Frances, R., Inc., 618 F.2d 147, 155 (1st Cir.1980), even if one party apparently failed to appreciate the legal consequences of the judgment at the time, PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 897-98 (2d Cir.1983).
The district court’s and the majority’s reliance on Federal Rule of Civil Procedure 70 and Flinn v. Rains (In re Rains), 388 B.R. 99, 103 (Bankr.E.D.Cal.2006), to conclude that a reasonable time for “compliance” has passed and can be added to the judgment after the time has passed is misplaced. Rule 70 in general and Rains in particular concern the court’s power to enforce judgments requiring a party to do something by instead requiring another to perform that act. Rule 70 provides: “If a judgment requires a party ... to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done ... by another person appointed by the court.” Fed.R.CivP. 70(a). In Rains, the bankruptcy court ordered Rains to take money out of his pension fund to pay Flinn “forthwith” after Rains failed to comply with a settlement agreement setting a date certain for such payment. 338 B.R. at 101. When he did not comply, the bankruptcy court concluded that a “reasonable time” had passed and appointed the trustee to take the money out of the fund and pay Flinn. Id. at 103.
In sharp contrast to the situation contemplated by Rule 70 and the actual facts of Rains, the judgment by its terms did not require Lindy to do anything. The judgment did not, to use the language of Rule 70, “require[ ] [Lindy] ... to perform any ... specific act.” Instead, the judgment imposed an obligation on Lindy to turn over the shingles in order to trigger its ability to collect redhibition damages from Shakertown. Even if, as the majority contends, Lindy was required to do a specific act, Rule 70’s remedy, after a “reasonable time” has passed, is to order another to do that which Lindy failed to do. Here, after a “reasonable time” had passed, in the district court’s view, it did not order someone else to take the shingles down and send them to Shakertown, which would have been the result under Rule 70 and Rains. Instead, it ordered that Lindy was too late and “out of luck.”
The continuation of the status quo— Lindy’s continued use of the shingles years after obtaining a favorable jury verdict— *519 does not reach the level of an exceptional circumstance justifying the wholesale abandonment of the jury’s verdict or the valid final judgment without any hope of recompense to Lindy for Shakertown’s original sale of defective goods.[6] The right to trial by jury should not drown in the “grand reservoir” of Rule 60(b)(6).

Rule 60(b)(5)

Because I conclude that Rule 60(b)(6) does not justify the relief granted, I turn to the original ground for the district court’s ruling not reached by the majority — Rule 60(b)(5). Rule 60(b)(5) states that, “[o]n motion and just terms, the court may relieve a party ... from a final judgment [or] order ... [when] applying it prospectively is no longer equitable.” Fed. R. Civ. P. 60(b)(5). The application of Rule 60(b)(5) here turns in part on the meaning of “prospective.” This Court has explained:
Like the traditional equity rule on which it is based, rule 60(b)(5) applies only to judgments that have prospective effect “as contrasted with those that offer a present remedy for a past wrong.” 11 [ChaRles Alan] Wright & [Arthur R.] Miller, Federal PRACTICE and Procedure § 2863[,] at 205 [ (1973) ] (footnote omitted). As Justice Cardozo pointed out in Swift, “The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative.”
Cook v. Birmingham News, 618 F.2d 1149, 1152 (5th Cir.1980) (quoting United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 76 L.Ed. 999 (1932)); see also Kirksey v. City of Jackson, 714 F.2d 42, 43 (5th Cir.1983) (affirming denial of relief sought under Rule 60(b)(5) because the judgment had no prospective effect). Other circuits have observed that “[t]he mere possibility that a judgment has some future effect does not mean that it is ‘prospective’ because ‘virtually every court order causes at least some reverberations into the future, and has ... some prospective effect.’ ” Kalamazoo River Study Group v. Rockwell Int’l Corp., 355 F.3d 574, 587 (6th Cir.2004) (quoting Twelve John Does v. District of Columbia, 841 F.2d 1133, 1138 (D.C.Cir.1988)) (second alteration in original).
Rule 60(b)(5), by its plain terms, does not permit the district court to vacate the jury’s money award in this matter. That section allows a district court with a continuing supervisory role to modify or vacate an order when conditions have changed such that continued enforcement of the order is inequitable. However, Shakertown cites no precedential cases that permit the application of Rule 60(b)(5) to judgments other than consent decrees, declaratory judgments, and injunctions, all of which tend to be “prospective” in nature. See id. at 588 (interpreting Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). The limited reach of Rule 60(b)(5) is consistent with the traditional reluctance of courts to disturb final judgments. See Goldstein v. MCI WorldCom, 340 F.3d 238, 258 (5th Cir.2003) (citing Pease v. Pakhoed Corp., 980 F.2d 995, 998 (5th Cir.1993) and Longden v. Sunderman, 979 F.2d 1095, 1102 (5th Cir.1992)). This disinclination would seem especially appropri *520 ate to observe where Rule 60(b)(5), as discussed above, would effectively overturn a jury verdict and hand a windfall to the losing party.[7] Although the judgment here conditions the payment of the jury’s award upon proper rescission of the contract — that is, the return of the faulty product to Shakertown — the judgment itself has no prospective effect. Whether or not the conditions have changed such that enforcement of the judgment is inequitable, the district court’s supervisory role concluded when it entered the judgment on September 25, 1998. Accordingly, I do not consider Rule 60(b)(5) to be the proper avenue for disturbing the jury’s finding of liability and the district court’s resulting final judgment.
Even if Rule 60(b)(5) applied here, as discussed above, Shakertown presented no evidence to support its conclusion that the passage of time materially altered the benefits it was to receive from the rescission. Rule 60(b)(5) relief is “only cautiously to be granted.... [Cjaution, substantial change, unforeseenness, oppressive hardship, and a clear showing are the requirements.” Valentine Sugars, Inc. v. Sudan, 34 F.Sd 320, 322 (5th Cir.1994) (internal citations and quotation marks omitted). No evidence was presented of the difference in value between the siding at the time of this court’s original affirmance and the time of Lindy’s rejected effort to return. Instead, the evidence from the trial suggested that, once removed, the shingles had no value. Thus, I conclude that Shak-ertown failed to meet its burden to prove “changed circumstances” that led to some unforeseen “oppressive hardship” against it.

Conclusion

Lindy’s delay in fulfilling the condition precedent to obtain its money judgment does not present an extreme situation sufficient to justify the exceptional remedy imposed by the district court — the annulment of the jury’s verdict by setting aside the judgment entered on that verdict. I would reverse the district court’s Rule 60(b) order.

. The district court rested its decision on Rule 60(b)(5), thus relegating Rule 60(b)(6) to a footnote. The two sentences are as follows: "The Court finds that the movers are alternatively entitled to relief under Rule 60(b)(6), which is a catch-all provision that gives the court discretion to afford a party from an order for 'any other reason that justifies relief,’ but is extraordinary relief requiring a showing of exceptional circumstances. ‘The broad language of Fed.R.Civ.P. 60(b)(6) provides the court ample power to vacate judgments whenever such action is appropriate to accomplish justice.' " Lindy Invs., III, L.P. v. Shakertown Corp., 631 F.Supp.2d 815, 822 n. 14 (E.D.La.2008) (citations omitted). Its discussion of Rule 60(b)(5) was quite thorough, and I will address that below.

. Shakertown's motion attached only Lindy’s attorney’s letter attempting to return the siding. Lindy’s response attached more counsel letters and the Affidavit of David Sanderson opining that the shingles as removed have no value. Shakertown’s reply did not contest this evidence and, again, attached only attorney letters regarding the dispute over whether Lindy could still enforce the judgment by returning the shingles.

. Harrell is actually almost the opposite of the situation here. While the facts are somewhat complex, simply stated, in Harrell, various plaintiffs sued Trupin, an individual, and several corporate defendants. The corporate defendants defaulted, while Trupin litigated through a jury verdict. The jury absolved Trupin of any wrongdoing but found that he was the alter ego of the defaulting corporate defendants. The plaintiffs then sought to enforce the default judgments against Trupin as alter ego. He, in turn, moved to set aside the default judgments under Rule 60(b), and the district court granted the motion. Thus, in addition to being a default judgment case, Harrell is one in which the effect of granting the motion was to follow the jury’s verdict as to the answering defendant, not defeat it. "The trial court was obviously disturbed by the prospect of having to afford [plaintiffs] the ability to accomplish through default what they could not achieve through a trial by jury.” 951 F.2d at 1459 (internal quotation marks and citation omitted). It then concluded that there "was no abuse of discretion in setting aside the default judgments so that those claims could be tried.” Id.

. The majority suggests that Lindy derived some value — the amount of which we know not from this record — by continuing to have the shingles on its buildings. But value to Lindy is not harm or detriment to Shaker-town. By way of analogy, I may derive some benefit from having paint — even defective paint — on my house, but it is of little use to anyone else if I scrape it off and send it to them. That is true whether I scrape it off immediately or many years later.

. In addition, the district court concluded that a “reasonable time” for return of the shingles would be one year, again without citing to or considering any evidence of what may be a "reasonable time” in the context of this particular product and this particular situation. Lindy Invs., 631 F.Supp.2d at 820 n. 10. Given that there is a ten-year time period for enforcement of judgments, that seems like a more appropriate "reasonable time” here than that found by the district court.

. The district court's conclusion that “[t]he plaintiffs’ deliberate delay until 2008 could not have been anticipated at the time the amended judgment was issued” is contradicted by the numerous state statutes that permit a prevailing party to delay many years before collecting a money judgment. See, e.g., La. Civ.Code Ann. art. 3501 (1994) (providing a period of ten years before a money judgment becomes unenforceable).

. As discussed in the context of Rule 60(b)(6), in this way, this case is quite different from many of the cases cited by the parties in which the effect of granting the Rule 60(b) motion is to allow a trial on the merits. Here, the effect is to deprive the winning party of the results of a trial on the merits without further recourse.