# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Submitted November 10, 2010      Decided March 25, 2011

No. 10-5061

UNITED STATES OF AMERICA,
APPELLEE

v.

8 GILCREASE LANE, QUINCY, FLORIDA 32351, ET AL.,
APPELLEES

ADSURFDAILY, INC., ET AL.,
APPELLANTS

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01345)

---

*Charles A. Murray* was on the briefs for appellants.

*Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, *Stephanie Lauren Brooker*, and *Barry Wiegand*, Assistant U.S. Attorneys, were on the brief for appellee.

Before: HENDERSON, TATEL, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: After appellants withdrew their claims in this civil forfeiture action, the district court entered a default judgment and final order of forfeiture. Appellants now ask us to reverse. For the reasons set forth below, we reject their arguments and affirm the judgment of the district court.

I

Appellant AdSurfDaily, Inc., is an internet marketing company incorporated and controlled by appellant Thomas Bowdoin, Jr. On August 1, 2008, federal agents seized approximately $80 million of the company's bank account funds as part of an investigation of the company for wire fraud and money laundering. Five days later, the government filed a complaint for forfeiture *in rem* against the funds and two pieces of real property that had been purchased with AdSurfDaily money, invoking 18 U.S.C. § 981(a)(1)(C), which authorizes civil forfeiture of proceeds traceable to wire fraud, and 18 U.S.C. § 981(a)(1)(A), which permits forfeiture of property involved in a money laundering scheme. Bowdoin, AdSurfDaily, and appellant Bowdoin/Harris Enterprises, Inc., filed verified claims to the properties.[1] On

---

[1] Rule C(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions requires a claimant in a forfeiture proceeding to file a "verified statement of right or interest" in the property at stake within fourteen days of execution of process or within the time the court allows. This statement is known as a "verified claim" and "is essential to confer[ring] statutory standing upon a claimant in a forfeiture action." *United States v. $125,938.62*, 370 F.3d 1325, 1328 (11th Cir. 2004) (per curiam) (alteration in original) (quoting *United States v. $175,918.00 in U.S. Currency*, 755 F. Supp. 630, 632 (S.D.N.Y. 1991)) (internal quotation marks omitted). Appellants filed claims

August 18, 2008, AdSurfDaily moved for dismissal of the forfeiture action and return of the seized funds. The district court held an evidentiary hearing and on November 19, 2008, denied the motion on the grounds that the government had properly filed its complaint and AdSurfDaily was not entitled to pretrial release of its assets. *United States v. 8 Gilcrease Ln., Quincy, Fla. 32351* (*8 Gilcrease Ln. I*), 587 F. Supp. 2d 133, 139-40, 146 (D.D.C. 2008). AdSurfDaily did not appeal this ruling.

On January 13, 2009, appellants through counsel moved for leave to withdraw their claims, stating that they "consent[ed] to the forfeiture of the properties." Mot. for Leave to Withdraw Claims, Release of Claims to Seized Property, and Consent to Forfeiture 2 [hereinafter Withdrawal Mot.]. The district court granted their motion. But appellants soon reversed course and, beginning on February 27, 2009, filed a series of *pro se* motions to rescind the withdrawal of their claims. Appellants subsequently hired new counsel, withdrew their *pro se* motions, and on September 14, 2009, filed a Rule 60(b) motion to reinstate their claims. Bowdoin submitted an affidavit in support alleging that the prosecutor and his lawyer had "hoodwinked" him into believing that if he withdrew his claims he would receive a decreased prison sentence or no sentence at all.

The district court denied appellants' motion on November 10, 2009, concluding that they had released their claims knowingly and voluntarily and that Bowdoin had done so on no more than a hope that his sentence would be decreased. *United States v. 8 Gilcrease Ln., Quincy, Fla. 32351* (*8 Gilcrease Ln. II*), 668 F. Supp. 2d 128, 132 (D.D.C.

---

to the real property and to approximately $66 million of the $80 million the government had seized.

2009). The court also determined that appellants had, in fact, received sound advice from counsel to release their claims, given that the government's case "appear[ed] to be strong." *Id.* at 131.

The government then moved for a default judgment and final order of forfeiture on the ground that no claimants contesting forfeiture remained in the case. On November 20, 2009, the district court directed all potential claimants to show cause why the court should not grant the government's motion. Neither appellants nor any other potential claimants responded, and the court entered a default judgment and final order of forfeiture on January 4, 2010.

Appellants then filed another Rule 60(b) motion, asking the district court to vacate the order refusing to reinstate their claims, the order to show cause, and the default judgment and final order of forfeiture. The court denied the motion on February 22, 2010, and appellants now seek relief from us. We have jurisdiction to consider their appeal under 28 U.S.C. § 1291.

## II

Appellants assert that the district court violated their due process rights in two ways. First, the court failed to stay the forfeiture action pending the outcome in the parallel criminal proceeding. Appellants claim a stay was constitutionally required because the allegations in the criminal proceeding were filed under seal with portions redacted, making it difficult or impossible to contest the government's grounds for forfeiture until the criminal proceeding was completed and the materials unsealed.[2] Second, appellants argue that by

---

[2] According to appellants, "where the basis for a civil forfeiture rests upon sealed allegations in a parallel criminal proceeding, the

refusing to reinstate their withdrawn claims, the court denied them the opportunity to challenge the forfeiture on the merits.

Neither argument has merit. Regarding the stay, appellants never asked for one, and we are aware of no authority for the proposition that a court has a duty to stay a civil forfeiture proceeding on its own initiative pending the outcome of a parallel criminal action. Appellants cite no authority for this proposition, and to our knowledge the only other circuit to consider the issue reached the opposite conclusion. *See United States v. Certain Real Prop. 566 Hendrickson Blvd., Clawson, Oakland Cnty., Mich.*, 986 F.2d 990, 996 (6th Cir. 1993). Additionally, we have previously stated that "[t]he Constitution . . . does not ordinarily *require* a stay of civil proceedings pending the outcome of criminal proceedings." *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (en banc) (emphasis added).

Nor does due process require the government to provide a person the opportunity to challenge the seizure of property he has voluntarily forfeited. Ordinarily, "a citizen has a right to a hearing to contest the forfeiture of his property, a right secured by the Due Process Clause." *Degen v. United States*, 517 U.S. 820, 822 (1996). The purpose of this right "is to protect [the] use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property." *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). When a person has voluntarily relinquished his claim to property, however, these concerns disappear. We have

due process rights of the defendant-claimant[] are properly protected where the civil forfeiture action is stayed pending outcome of the criminal trial, after which[] the sealed information may be unsealed in the civil [action] to afford the [c]laimant[] opportunity to meaningfully defend on the merits." Appellants' Br. 13 (emphasis omitted).

previously said that "[a]bsent an underlying property or liberty interest, . . . one has no entitlement to procedural due process and hence no 'right to be heard.'" *Sargeant v. Dixon*, 130 F.3d 1067, 1070 (D.C. Cir. 1997); *see also Mercado-Alicea v. P.R. Tourism Co.*, 396 F.3d 46, 53 (1st Cir. 2005) ("[Appellant] voluntarily gave up his property interest . . . and does not have a due process right to a hearing."). By voluntarily releasing their claims to the properties, appellants relinquished their right to an adversarial hearing to contest the grounds for forfeiture. It goes without saying, of course, that had the district court granted appellants' Rule 60(b) motion to reinstate their withdrawn claims, they would have been entitled to an adversarial hearing before being deprived of the properties.

Neither of the cases appellants cite for the proposition that they were entitled to an adversarial hearing is on point. *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993), held that absent "exigent circumstances," due process requires the government to provide "notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62. Here, although the government seized the bank account funds prior to appellants' withdrawal of claims, there is no indication that it seized the real property at issue prior to appellants' withdrawal. *United States v. Property Identified as Lot Numbered 718*, 20 F. Supp. 2d 27 (D.D.C. 1998), is similarly distinguishable. *See id.* at 35-38 (finding due process violation where government seized claimant's home without an adversarial hearing). In any event, in neither *James Daniel Good* nor *Lot Numbered 718* did the claimant relinquish claim to the property, voluntarily or otherwise.

We turn next to the district court's denial of appellants' first Rule 60(b) motion, which sought to reinstate their

previously withdrawn claims to the properties. We review the district court's decision for abuse of discretion. *See Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006). Federal Rule of Civil Procedure 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for," *inter alia*, "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1); "fraud . . . , misrepresentation, or misconduct by an opposing party," *id.* 60(b)(3); or "any other reason that justifies relief," *id.* 60(b)(6). Appellants contend that the district court should have reinstated their withdrawn claims to the properties because Bowdoin acted on his attorney's negligent advice that he could "wholly" avoid jail time by relinquishing his claims. Appellants' Br. 16.

Neither side cites, and we are unable to find, any circuit court precedent setting forth principles for assessing whether a district court abused its discretion in denying a Rule 60(b) motion to rescind a withdrawal of claims in a civil forfeiture action. Casting our net a bit wider, we take counsel from the Supreme Court's instruction that Rule 60(b) is not an avenue for relieving litigants from "free, calculated, deliberate choices." *Ackermann v. United States*, 340 U.S. 193, 198 (1950). This teaching has guided much of our Rule 60(b) case law, *see, e.g.*, *In re Sealed Case (Bowles)*, 624 F.3d 482, 489 n.4 (D.C. Cir. 2010) (stating that appellant could not "use Rule 60(b) to avoid its strategic choice" to file a rushed, poorly drafted request for judicial notice before the court ruled on other pending motions); *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (vacating grant of Rule 60(b) motion deeming plaintiffs "employees" under the Back Pay Act, because plaintiffs' failure to request retroactive employee status "was clearly a litigation choice"), and we have emphasized several times that "Rule 60(b) cannot . . . be

employed simply to rescue a litigant from strategic choices that later turn out to be improvident." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980); *accord Kramer*, 481 F.3d at 792; *Smalls*, 471 F.3d at 191; *S. Pac. Commc'ns Co. v. AT&T*, 740 F.2d 1011, 1019 (D.C. Cir. 1984). Applying the Supreme Court's instruction to the case before us, we hold that a district court does not abuse its discretion in denying a Rule 60(b) motion to reinstate withdrawn claims when the withdrawal was the product of a free, deliberate choice. We further find that appellants' choice to withdraw their claims in this case was free and deliberate.

To begin with, there can be no doubt that appellants meant to withdraw their claims. Their withdrawal motion expressly stated that they wished to "withdraw and release with prejudice" their verified claims and that they "consent[ed] to the forfeiture of the properties." Withdrawal Mot. 2. Nor is there any basis to conclude that appellants were somehow tricked into releasing their claims. Despite Bowdoin's protests to the contrary, his own affidavit shows that he understood well that he was receiving no promise in return for relinquishing his claims. *See* Bowdoin Aff. ¶ 8 ("I . . . signed a document stating that I would release my claims . . . on the understanding that by cooperating I could possibly avoid a prison sentence."); *id.* ¶ 11 ("[My attorney] le[d] me to believe that if I cooperated there was a possibility that I would not be incarcerated or imprisoned."); *id.* ¶ 12 ("I believed that my cooperation would still result in a criminal sentence that could possibly not include imprisonment or incarceration."). That he feared a stiffer prison sentence if he did not withdraw his claims does not mean his withdrawal was not a free, deliberate choice. *Cf. Brady v. United States*, 397 U.S. 742, 749-55 (1970) (holding that a guilty plea is not involuntary even though made to avoid possibility of death penalty). Of course, had Bowdoin been induced to withdraw

his claims by a false promise of a more lenient sentence, his choice to withdraw would not have been free and deliberate, but that is not this case.

Moreover, far from being negligent, appellants' attorney had sound reasons for recommending that they cooperate with prosecutors by relinquishing their claims. "Such an approach from counsel could be seen as the norm when the Government's evidence is strong," *8 Gilcrease Ln. II*, 668 F. Supp. 2d at 131, and indeed, the district court itself remarked below that based on the affidavits received and the testimony at the evidentiary hearing, the government's evidence "appear[ed] to be strong," *id.* Further, the witnesses AdSurfDaily offered at the evidentiary hearing to prove that it operated a legitimate business contradicted each other, *see 8 Gilcrease Ln. I*, 587 F. Supp. 2d at 144, and at least one actually undermined the company's position, *see id.* at 143. We thus need not consider whether a party that withdraws its claims based on negligent advice from counsel has made a free, deliberate choice to withdraw. Under the circumstances of this case, the district court did not abuse its discretion in denying appellants' Rule 60(b) motion to reinstate their withdrawn claims.

After the district court entered a default judgment and final order of forfeiture, appellants filed another Rule 60(b) motion, this time asking the court to vacate the denial of their reinstatement motion, the order to show cause why a default judgment should not be entered, and the default judgment and final order of forfeiture. Appellants claim they never received notice of the show cause order, making their failure to respond "excusable neglect," *see* Fed. R. Civ. P. 60(b)(1), and rendering the subsequent default judgment invalid because their default was not "willful," *see Jackson v. Beech*, 636 F.2d 831, 832 (D.C. Cir. 1980) ("A motion for relief from a default

judgment should be granted when . . . the defendants have not willfully defaulted . . . .").

But as appellants concede, *see* Reply Br. 2, they were no longer parties to the forfeiture proceeding when the show cause order issued. Although notice generally must be "given to parties known to the government as potential claimants" before the court may enter default judgment in a forfeiture action, *United States v. $4,224,958.57*, 392 F.3d 1002, 1005 (9th Cir. 2004), a party who has lost a Rule 60(b) motion to reinstate voluntarily withdrawn claims is not a "potential claimant" entitled to notice of a proposed default judgment. Obvious fairness concerns motivate the notice requirement for known potential claimants. *See, e.g.*, *Auster Oil & Gas, Inc. v. Stream*, 891 F.2d 570, 581 (5th Cir. 1990) (Garwood, J., specially concurring) ("For one to be bound by a judgment in a suit to which it was not a party and of which it had no notice is, to say the least, unusual, if not unconstitutional."). But these concerns do not apply where a party has previously received notice, filed claims, voluntarily withdrawn those claims, and tried but failed to convince a court to reinstate the withdrawn claims. Thus, whether appellants in this case received notice of the district court's show cause order is irrelevant given that they were no longer parties to the proceeding and no longer had any claim to the properties. The district court did not abuse its discretion in denying appellants' second Rule 60(b) motion.

Finally, appellants challenge the district court's entry of default judgment and final order of forfeiture as untimely. Federal Rule of Appellate Procedure 4 gives a party sixty days to appeal a judgment or order when the United States is a party to the suit. Fed. R. App. P. 4(a)(1)(B). The district court, however, entered default judgment and final order of forfeiture only fifty-five days after denying appellants'

motion to reinstate their withdrawn claims. Appellants claim that the district court's entry of default judgment prevented them from filing an interlocutory appeal of the order denying their reinstatement motion. This argument is moot. We are now hearing the very appeal that appellants claim the district court's entry of default judgment foreclosed.

## III

For the foregoing reasons, the judgment of the district court is

*Affirmed.*