# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 12, 2017        Decided July 20, 2018

No. 16-7142

CHAIM KAPLAN, INDIVIDUALLY AND AS NATURAL GUARDIAN
OF PLAINTIFFS M.K.(1), A.L.K., M.K.(2), C.K. AND E.K., ET
AL.,
APPELLANTS

v.

CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN, ALSO
KNOWN AS BANK MARKAZI JOMHOURI ISLAMI IRAN, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00483)

———

*Meir Katz* argued the cause for appellants. With him on
the briefs was *Robert J. Tolchin*.

*Jeremy D. Frey* argued the cause for appellees. With him
on the brief was *Matthew D. Foster*.

———

No. 16-7122

CHAIM KAPLAN, ET AL.,
APPELLANTS

v.

HEZBOLLAH, ALSO KNOWN AS HIZBULLAH, ALSO KNOWN AS HIZBOLLAH, ALSO KNOWN AS HEZBALLAH, ALSO KNOWN AS HIZBALLAH AND DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA, ALSO KNOWN AS NORTH KOREA, APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-00646)

————

*Meir Katz* argued the cause for appellants. With him on the briefs was *Robert J. Tolchin*.

*Anthony F. Shelley*, appointed by the court, argued the cause as *amicus curiae* in support of the portions of the District Court's judgment at issue on appeal. With him on the brief were *Ian A. Herbert* and *Adam W. Braskich*.

Before: KAVANAUGH[*] and SRINIVASAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

Concurring opinion filed by *Senior Circuit Judge* EDWARDS.

_____

[*] Judge Kavanaugh was a member of the panel at the time the cases were argued but did not participate in this opinion.

3

SRINIVASAN, *Circuit Judge*: These cases arise from a barrage of rocket attacks launched by Hezbollah into northern Israel in the summer of 2006. Plaintiffs are a group of American, Israeli, and Canadian citizens who sued Hezbollah and two foreign banks for injuries sustained during the attacks. In one action, the American plaintiffs allege that Hezbollah's rocket attacks amounted to acts of international terrorism, in violation of the Anti-Terrorism Act (ATA). In a second action, all of the plaintiffs accuse the banks of funding Hezbollah's attacks, in violation of both the ATA and the Alien Tort Statute (ATS).

The district court dismissed both complaints. The court concluded that the ATA's so-called act-of-war exception precluded the claims under that statute, and that the presumption against extraterritoriality barred the ATS claims.

We vacate the district court's dismissal with respect to the ATA claims and remand for further proceedings. We conclude that the district court must first determine that it has personal jurisdiction over the defendants before applying the statute's act-of-war exception. We affirm the district court's dismissal of the claims under the ATS based on the Supreme Court's recent decision in *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018), which holds that foreign corporations (like the bank defendants here) are not subject to liability under that statute.

I.

The complaints in these cases contain the following allegations, which we assume are true given that the claims before us on appeal were dismissed based on the alleged facts. *See English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013).

On July 12, 2006, Hezbollah militants left Lebanon, crossed the Israeli border, and kidnapped and killed several Israeli soldiers. Israel responded by mounting a ground offensive in Lebanon and deploying a bombing campaign against Hezbollah. Hezbollah then initiated a campaign of rocket attacks, firing thousands of unguided rockets into civilian populations in northern Israel, striking cities, towns, and villages. The conflict ended on August 14, 2006, when the United Nations brokered a cease-fire between Hezbollah, Israel, and Lebanon. Over the course of the 34-day conflict, numerous persons lost their lives, including more than 1,000 Lebanese civilians, between 250 and 500 members of Hezbollah, 119 Israeli soldiers, and 43 Israeli civilians.

In 2009 and 2010, plaintiffs filed two separate actions to recover for their injuries from Hezbollah's rocket attacks. In the first action, a group of American plaintiffs brought Anti-Terrorism Act claims against Hezbollah, Foreign Sovereign Immunities Act claims against North Korea for funding the rocket attacks, and common law tort claims against both defendants. In the second action, the same American plaintiffs brought ATA claims against Bank Saderat PLC for transferring funds from Iran to Hezbollah, and Foreign Sovereign Immunities Act claims against Iran, the Central Bank of Iran, and Bank Saderat Iran for supporting the rocket attacks. The second action also included claims by a group of non-American plaintiffs against Bank Saderat Iran and Bank Saderat PLC under the Alien Tort Statute. In addition, all plaintiffs in the second action raised claims under Israeli tort law against Bank Saderat Iran and Bank Saderat PLC.

The district court largely addressed the two cases together. Because Hezbollah and North Korea failed to appear after being served, the plaintiffs moved for a default judgment against those defendants. Bank Saderat Iran and Bank Saderat

PLC both appeared and moved to dismiss the claims against them for lack of subject-matter jurisdiction or personal jurisdiction, and for failure to state a claim.

On August 20, 2013, the district court dismissed the Anti-Terrorism Act claims (which had been brought against Hezbollah and Bank Saderat PLC), holding that the ATA's act-of-war exception precluded liability. The court also dismissed the Alien Tort Statute claims (which had been brought against Bank Saderat PLC and Bank Saderat Iran), based on the presumption against extraterritoriality. *Kaplan v. Cent. Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185, 204-05 (D.D.C. 2013). And the court dismissed the Foreign Sovereign Immunities Act claims against Bank Saderat Iran, because the bank was not the "agency or instrumentality of a foreign state." *Id*. at 198-99.

On July 24, 2014, the district court issued an opinion concluding that Iran and North Korea, but not the Central Bank of Iran, had materially supported Hezbollah's attacks in violation of the Foreign Sovereign Immunities Act. On September 30, 2016, after further proceedings on the claims against Iran and North Korea, the district court entered a default judgment against those defendants, awarding the plaintiffs more than $169 million in compensatory and punitive damages.

The plaintiffs now appeal the dismissal of their Anti-Terrorism Act claims against Hezbollah and Bank Saderat PLC, as well as the dismissal of their Alien Tort Statute claims against Bank Saderat PLC and Bank Saderat Iran. Because Hezbollah had not entered an appearance, we appointed an amicus curiae to present arguments supporting the portions of the district court's judgment at issue on appeal.

6

II.

We initially consider two challenges to our appellate jurisdiction. Under 28 U.S.C. § 1291, we may review "final decisions" of the district courts in civil cases if an appeal is taken within thirty days of entry of the judgment or order being challenged. *See* Fed. R. App. P. 4(a)(1)(A). Bank Saderat PLC and Bank Saderat Iran (the Banks) argue that plaintiffs' appeal is untimely because the district court entered its order dismissing the claims against the Banks on August 20, 2013, more than three years before the plaintiffs (on November 27, 2016) filed their notice of appeal concerning those claims. Amicus, for its part, argues that plaintiffs' appeal of the dismissal of the claims against Hezbollah is premature because the district court's September 30, 2016, order was not a "final" decision within the meaning of Section 1291. We disagree on both counts.

A.

We first address the timeliness of the plaintiffs' appeal of the August 2013 dismissal of their claims against the Banks. Federal Rule of Civil Procedure 54(b) governs the entry of final judgment in a case involving multiple claims and parties. In order to enter "a final judgment as to one or more, but fewer than all, claims or parties," a district court must "expressly determine[] that there is no just reason for delay." Fed. R. Civ. P. 54(b). Otherwise, any decision "that adjudicates . . . the rights and liabilities of fewer than all the parties" is not a final, appealable judgment. *Id.*

Relatedly, our court has determined that unserved defendants "are not 'parties' within the meaning of Rule 54(b)." *Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 489 F.3d 1356, 1360 (D.C. Cir. 2007). Therefore, "a district court

order disposing of all claims against all properly served defendants" generally constitutes a final judgment "even if claims against those not properly served remain unresolved." *Id*. at 1360-61.

Relying on that aspect of our decision in *Cambridge*, the Banks contend that the plaintiffs' appeal is untimely. The Banks observe that, at the time of the district court's August 2013 dismissal of the claims against them, the remaining defendants in the case involving the Banks—Iran and Central Bank of Iran (CBI)—had not yet been properly served. Thus, in the Banks' view, Iran and CBI were not "parties" for purposes of Rule 54(b), meaning that the August 2013 order constituted a final judgment "disposing of all claims against all properly served defendants." *Cambridge*, 489 F.3d at 1361. That order, the Banks submit, thus needed to be appealed within 30 days. *See* Fed. R. App. P. 4(a)(1)(A).

The Banks are correct that, under *Cambridge*, the existence of unresolved claims against unserved defendants generally will not preclude treatment of an order disposing of all other claims as a final, appealable judgment. But *Cambridge* also recognized the possibility of a different result when the district court affirmatively contemplates further proceedings on the claims against the unserved defendants. We observed that, in the Ninth Circuit, "an order disposing of all claims only against served parties is not final if 'it is clear from the course of proceedings that further adjudication is contemplated' by the district court." *Cambridge*, 489 F.3d at 1360 n.2 (quoting *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 872 (9th Cir. 2004)).

Although we had no occasion in *Cambridge* to consider whether to adopt the same approach, we do so today. We conclude that, when a district court makes plain that it foresees

further proceedings on unresolved claims against defendants who have yet to be properly served, a decision resolving all the claims against the properly served defendants is not a final, appealable judgment. In that situation, any appeal should await resolution of the contemplated further proceedings on the claims against the as-yet-unserved defendants.

That approach vindicates Rule 54(b)'s central purpose of avoiding the "piecemeal disposition of litigation." *Cambridge*, 489 F.3d at 1361. It also ensures that Rule 54(b) continues to enable district courts to lend "welcome certainty to the appellate procedure." *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956). That is because, if a district court wishes to allow the immediate appeal of its disposition of claims against the properly served defendants even though it affirmatively contemplates further proceedings on the remaining claims, it can do so by expressly determining "that there is no just reason for delay." Fed. R. Civ. P. 54(b).

Consider the anomalous implications of a contrary approach, under which the resolution of claims against properly served defendants would be considered a final judgment even though the district court intends further proceedings against as-yet-unserved defendants. In such a regime, the district court would be unable to dispose of the claims against properly served defendants without entering a final judgment, even if it fully expects other defendants to be imminently served. The court might then opt to delay announcing its resolution of the claims against the already served defendants so as to avoid fracturing the case, contravening the Rules' general preference for the swift resolution of claims. *See* Fed. R. Civ. P. 1. The better course is to recognize that, when a district court plainly contemplates further proceedings on remaining claims against as-yet-unserved defendants, the resolution of the claims against

properly served defendants is not a final, appealable judgment (absent an express and reasonable determination of "no just reason for delay" under Rule 54(b)). *See Bldg. Indus. Ass'n of Superior California v. Babbitt*, 161 F.3d 740, 741 (D.C. Cir. 1998).

Applying that approach here, it is clear that, when the district court dismissed the claims against the Banks in August 2013, it contemplated further proceedings on the claims against the unserved defendants, Iran and CBI. In its memorandum opinion dismissing the claims against the Banks, the court repeatedly referred to Iran and CBI as "the remaining defendants," and the FSIA claims against them as the "remaining claims." *Kaplan*, 961 F. Supp. 2d at 206. The court also discussed the failed previous attempts at service and ordered the plaintiffs to serve Iran and CBI through diplomatic channels within twenty-one days. *Id.* Indeed, in its order accompanying the opinion, the court dismissed the claims against the Banks in two lines and then devoted a full page to describing how the plaintiffs should "commence service of process via diplomatic channels" for their "remaining claims." Order, *Kaplan v. Cent. Bank of Islamic Republic of Iran*, No. 10-cv-483 (D.D.C. Aug. 20, 2013), ECF No. 41. In short, both the opinion and order make clear the district court's expectation that the remaining defendants could be properly served and the claims against them would then proceed to resolution (which in fact happened).

In those circumstances, we hold that the district court's August 20, 2013, order, dismissing the claims against the Banks, was not a final, appealable judgment. Rather, the court's October 28, 2016, order denying plaintiffs' motion for reconsideration (and for alteration or amendment of the judgment) was the operative appealable judgment. *See* Fed. R.

App. P. 4(a)(4)(A)(iv). Plaintiffs timely filed their notice of appeal within 30 days of that judgment.

B.

Whereas the Banks contend that the appeal of the dismissal of the claims against them was too late, Amicus suggests that the appeal of the dismissal of the claims against Hezbollah may have been too early. The district court initially dismissed the ATA claims against Hezbollah on August 20, 2013. And on August 20, 2015, plaintiffs voluntarily dismissed the tort claims against Hezbollah. After further proceedings on claims involving other defendants, the district court, on September 30, 2016, entered an "Order and Judgment" that it characterized as a "final judgment." Order & Judgment, *Kaplan v. Hezbollah*, No. 09-cv-646 (D.D.C. Sept. 30, 2016), ECF No. 84. One week later, on October 7, the plaintiffs filed a notice of appeal concerning the dismissal of the claims against Hezbollah.

As we have seen, an order resolving fewer than all claims against all defendants generally is not a final, appealable order. *See* Fed. R. Civ. P. 54(b). Amicus argues that we may lack jurisdiction over the appeal concerning the claims against Hezbollah insofar as the district court's September 30, 2016, order left unresolved certain of the claims in the case involving Hezbollah. In particular, although the plaintiffs' complaint in that case alleged both Foreign Sovereign Immunities Act (FSIA) claims and tort claims against North Korea, the district court expressly referenced only the FSIA claims in its opinion granting judgment on those claims. To the extent the tort claims against North Korea remained unresolved, Amicus contends, there may have been no final, appealable judgment.

We conclude that there was a final, appealable judgment because the district court treated the FSIA and tort claims as a

common, undifferentiated whole. That is consistent with the structure of the FSIA, under which foreign sovereigns are rendered "liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606; *see Owens v. Republic of Sudan*, 864 F.3d 751, 763-64 (D.C. Cir. 2017) (noting that because "[n]one of the original exceptions in the FSIA created a substantive cause of action against a foreign state," plaintiffs bringing an FSIA claim generally must rely on a source of "underlying substantive law" such as tort law).

Throughout the proceedings in the district court, the court and parties treated the case as one involving claims brought under the FSIA, such that the tort claims were subsumed in the FSIA claims. For instance, after dismissing the ATA claims against Hezbollah, the court explained that only the FSIA claims against North Korea remained. And any ambiguity about the district court's intent to end the case—with respect to all claims—was resolved when the court issued its September 30, 2016, order, which it termed a "final appealable order" entering "final judgment" against North Korea for violating the FSIA. The judgment awarded the plaintiffs over $169 million in damages.

Plaintiffs, at that point, had obtained from North Korea all of the relief they sought, for all of the injuries they alleged. There was no remaining injury to be redressed via tort claims— any separate recovery on those claims would have been fully redundant. *See Kassman v. Am. Univ.*, 546 F.2d 1029, 1034 (D.C. Cir. 1976); *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 401 (D.D.C. 2015). Consequently, the judgment, along with the district court's unequivocal words of finality, brought the action to a close, just as the district court intended. *Cf. Attias v. Carefirst, Inc.*, 865 F.3d 620, 624 (D.C. Cir. 2017) (characterizing the "district court's intent [a]s a significant

factor" in determining finality). We thus have appellate jurisdiction to hear the appeal from that judgment.

## III.

Recall that the district court dismissed the Anti-Terrorism Act claims against Hezbollah and Bank Saderat PLC under the statute's act-of-war exception, and dismissed the Alien Tort Statute claims against both of the Banks based on the presumption against extraterritoriality. Plaintiffs argue that the district court erred by resolving the ATA claims on those grounds without first confirming that it had personal jurisdiction over the defendants. And because we have a duty to assure ourselves of our jurisdiction, we must also consider whether the court erred in the same respect with regard to the ATS claims.

We take up the following questions in addressing whether the district court was obligated to confirm the existence of personal jurisdiction before resolving the ATA and ATS claims: (i) can plaintiffs challenge the dismissals on that basis even though they believe personal jurisdiction exists?; (ii) if so, is personal jurisdiction an issue that a district court must examine before reaching the merits of a claim?; (iii) if so, is the ATA's act-of-war exception a merits issue, such that it can be reached only after assuring the existence of personal jurisdiction?; and (iv) similarly, can the ATS claims be resolved based on the presumption against extraterritoriality, or based on the Supreme Court's recent rejection of ATS liability for foreign corporations, *see Jesner*, 138 S. Ct. 1386, without first addressing personal jurisdiction?

We agree with the plaintiffs as to the ATA claims, and so vacate the dismissal of those claims and remand to enable the district court to address personal jurisdiction. But we affirm

the dismissal of the ATS claims based on the Supreme Court's decision in *Jesner*.

## A.

In the proceedings before the district court, plaintiffs understandably asserted that the court had personal jurisdiction over the defendants. In light of plaintiffs' position to that effect in the district court, Amicus argues that plaintiffs either waived the ability to raise a challenge based on the district court's failure to assure the existence of personal jurisdiction, or lack standing to bring such a challenge on appeal. We disagree.

Plaintiffs do not now take back their previous assertion that the district court had personal jurisdiction over the defendants. Instead, plaintiffs want the district court to establish the existence of personal jurisdiction rather than bypass the issue, because a failure by the court to establish personal jurisdiction could undermine the enforceability of its judgment in a subsequent proceeding. For instance, if this court were to reverse the district court's dismissals and plaintiffs ultimately were to prevail on the claims, a failure to establish personal jurisdiction could impair the plaintiffs' ability to enforce the judgment in their favor. *See Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987) ("[A]n in personam judgment entered without personal jurisdiction over a defendant is void as to that defendant."). That alleged injury suffices to establish the plaintiffs' standing on appeal to challenge the district court's orders on the ground that the court was obligated to establish personal jurisdiction before going on to resolve the claims. *See Nat'l Res. Def. Council v. Pena*, 147 F.3d 1012, 1018 (D.C. Cir. 1998); 15A Charles Alan Wright et al., Federal Practice and Procedure § 3902 (2d ed. 1992).

14

B.

In contending that the district court was required to establish the existence of personal jurisdiction over the defendants before resolving the claims, plaintiffs rely on principles established by the Supreme Court in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998). In *Steel Co.*, the Court rejected the practice of "hypothetical jurisdiction," under which a court assumes it has jurisdiction over a claim and proceeds to resolve it on the merits. Rather than assuming (without deciding) jurisdiction and going on to address the merits, *Steel Co.* explained, a court must first establish as "an antecedent" matter that it has jurisdiction. *Id.* at 101. That is because, without jurisdiction, a court lacks power to consider a case at all. *Id.* at 94; *see Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010).

*Steel Co.* involved a question of subject-matter jurisdiction (there, the issue of standing under Article III). *See* 523 U.S. at 102. Here, we consider whether the same rule of priority extends to a court's personal jurisdiction: that is, must a court likewise assure itself that it has personal jurisdiction before moving on to address the merits of a claim? The plaintiffs say yes, but the Banks and Amicus say no. The plaintiffs have the correct understanding.

The Supreme Court settled the issue in *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007). There, the Court explained that its decision in *Steel Co.* "clarified that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) *and the parties (personal jurisdiction)*." *Id.* at 430-31 (emphasis added). After *Sinochem*, it is clear that, when personal jurisdiction is in

question, a court must first determine that it possesses personal jurisdiction over the defendants before it can address the merits of a claim.

While we have not previously addressed the issue squarely, our precedent is consistent with that understanding. For example, in *Forras v. Rauf*, the defendant moved to dismiss for lack of subject-matter and personal jurisdiction, as well as on several merits grounds. 812 F.3d 1102, 1104 (D.C. Cir.), *cert. denied*, 137 S. Ct. 375 (2016). The district court dismissed on the merits without addressing either jurisdictional objection. Citing "*Steel Co.* and its progeny," we found the district court erred by "leapfrogg[ing] over the serious jurisdictional issues." *Id.* at 1105. Without distinguishing between subject-matter and personal jurisdiction, we held that "[t]he district court plainly should have satisfied any jurisdictional concerns before turning to a merits question[.]" *Id.* In another case, similarly, we relied on *Sinochem* in explaining that we would first address a personal-jurisdiction challenge before turning to the merits of the appeal. *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 964 (D.C. Cir. 2016).

It is true that, in two prior decisions, we understood *Steel Co.* to require resolving issues of *Article III* jurisdiction before addressing the merits. *See Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008); *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007). Insofar as those decisions interpreted *Steel Co.*'s prohibition against "hypothetical jurisdiction" to be confined solely to questions of Article III jurisdiction, they would be in tension with the broader interpretation established in *Sinochem*. 549 U.S. at 431. Neither of those decisions specifically dealt with the issue of *personal* jurisdiction, however, and neither decision thus stands in the way of our adhering to *Sinochem* with respect to

a question of personal jurisdiction. Those decisions instead addressed the applicability of *Steel Co.* to a question of statutory jurisdiction, not personal jurisdiction, concluding that the *Steel Co.* rule did not govern in the specific circumstances. *See Chalabi*, 543 F.3d at 728; *Kramer*, 481 F.3d at 791. (Insofar as the continuing vitality of those decisions may be open to question even in the sphere of statutory jurisdiction in which they arose, *see infra* at 1-7 (Edwards, J., concurring), we need not resolve that issue in this case.)

While *Sinochem* draws an equivalence between questions of subject-matter jurisdiction and questions of personal jurisdiction for purposes of the *Steel Co.* rule of priority, there is an important distinction in the way a jurisdictional question arises in the two contexts. A defect of subject-matter jurisdiction is non-waivable, such that a court must always assure itself of its subject-matter jurisdiction regardless of whether a party has raised a challenge. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). With personal jurisdiction, by contrast, a defendant can waive an objection by failing to raise the issue. *See, e.g.*, *id.* at 703-04. A court thus generally has no obligation to raise a question of personal jurisdiction on its own. *See Anger v. Revco Drug Co.*, 791 F.2d 956, 958 (D.C. Cir. 1986).

That in turn has implications for the operation of *Steel Co.*'s rule of priority. With regard to subject-matter jurisdiction, a court must assure itself of the existence of subject-matter jurisdiction before reaching the merits regardless of whether a party raises a jurisdictional challenge. With regard to personal jurisdiction, however, a court is obligated to address the issue of personal jurisdiction before reaching the merits only if an objection as to the court's personal jurisdiction has been asserted.

Here, the Banks raised a challenge to the district court's personal jurisdiction in the case containing the claims against them, seeking dismissal on that ground. And while the Banks could have waived that objection on appeal, *see World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002), they instead reiterated the objection. *See* Banks' Appellee Br. 5 n.3.

Meanwhile, in the case containing the claims against Hezbollah, the defendants never entered an appearance. Their absence imposed an independent obligation on the district court to satisfy itself of its personal jurisdiction before entering a default judgment against a missing party. *See Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005); 10A Charles Alan Wright et al., Federal Practice and Procedure § 2682 (3d ed. 1998). As a result, the personal jurisdiction issue was live in that case as well.

In neither case, however, did the district court address personal jurisdiction before dismissing the ATA claims or the ATS claims. Insofar as the grounds on which those claims were dismissed amounted to dispositions on the merits, the district court, per *Steel Co.* and *Sinochem*, should have first assured itself of its personal jurisdiction over the defendants. We thus proceed to consider next whether the grounds for dismissing those claims were dispositions on the merits—first, with respect to the ATA claims, and then, with respect to the ATS claims.

## C.

The district court's dismissal of the ATA claims under the statute's act-of-war exception could be appropriate only if the disposition on that ground did not amount to a merits determination. The Banks contend that the act-of-war

exception goes to a district court's subject-matter jurisdiction, not the merits, and Amicus agrees that the exception's applicability poses a jurisdictional question. We disagree and conclude that the act-of-war exception presents a merits issue, not a jurisdictional one. As a result, the district court could not rely on the exception without first establishing personal jurisdiction.

The Supreme Court has articulated a "readily administrable bright line" for determining whether a statutory limitation like the act-of-war exception qualifies as jurisdictional. *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). Unless Congress "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," we generally treat the limitation as non-jurisdictional. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006). Congress, though, need not "incant magic words" to establish a limitation's jurisdictional character. *Sebelius*, 568 U.S. at 153. We look both to the text of the limitation and to the statutory context to discern Congress's intent. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 162, 164-65 (2010).

The Anti-Terrorism Act establishes a civil remedy for American nationals injured by acts of "international terrorism" committed outside of the United States. 18 U.S.C. § 2333(a). An act qualifies as "international terrorism" only if it violates a domestic criminal law (either state or federal) and intends to coerce a civilian population, influence government policy, or affect government conduct. *Id.* § 2331(1).

Even if an act fits that definition, the ATA's act-of-war exception provides that "[n]o action shall be maintained under section 2333 . . . for injury or loss by reason of an act of war." *Id.* § 2336(a). "Act of war" is a term of art under the statute,

defined to include "any act occurring in the course of" any of the following: a "declared war," an "armed conflict, whether or not war has been declared, between two or more nations," or an "armed conflict between military forces of any origin." *Id.* § 2331(4).

The text of the act-of-war exception does not "speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982). Nor does the statutory context suggest that, notwithstanding the absence of a "clear jurisdictional label," the exception "nonetheless impose[s] a jurisdictional limit." *Reed Elsevier*, 559 U.S. at 162.

For instance, the act-of-war exception is not situated in a statutory section addressing jurisdiction, which can be an important sign of jurisdictional status. *Id.* at 164. There is a separate ATA provision entitled "Jurisdiction and venue." 18 U.S.C. § 2334; *see id.* § 2338 (granting federal district courts exclusive jurisdiction). The act-of-war exception is found in a section entitled "Other limitations," along with provisions pertaining to non-jurisdictional limitations on discovery and to stays of ATA actions pending criminal proceedings. *Id.* § 2336.

Section 2336's "Other limitations" are appended to—and naturally coupled with—the immediately preceding section, entitled "Limitations of actions." *Id.* § 2335. Section 2335 sets out the statute of limitations governing ATA claims. And given that statutes of limitations "ordinarily are not jurisdictional," *Sebelius*, 568 U.S. at 154, Congress's pairing of the statute of limitations with the act-of-war exception indicates that the exception likewise is non-jurisdictional.

Amicus notes that, even if the act-of-war exception is not housed in a provision pertaining to jurisdiction, the exception cross-references Section 2333, and subsection (a) of the latter provision is entitled "Action and jurisdiction." 18 U.S.C. § 2333(a). That subsection, in accordance with its title, serves two purposes: it both establishes the availability of a civil action under the ATA and vests jurisdiction in district courts over such an action. The cross-reference pertains to the former ("action"), not the latter ("jurisdiction"), by forging an exception for acts of war to the availability of an action to recover for "an act of international terrorism." *Id.* The cross-reference thus affords no basis for concluding that the act-of-war exception is jurisdictional.

The act-of-war exception's function in the ATA, including its association with Section 2333(a), reinforces the exception's non-jurisdictional character. The exception, along with the definitions in Section 2331, tells us "what conduct [the ATA] prohibits," which is typically "a merits question," not a jurisdictional one. *Morrison*, 561 U.S. at 254. And the exception becomes salient only if the act in question qualifies as "an act of international terrorism" in the first place. 18 U.S.C. § 2333(a). Whether the challenged conduct qualifies as "an act of international terrorism" plainly goes to the merits of an ATA action. So too, presumably, is the case with an associated exception that exempts conduct from the primary category of international terrorism.

Amicus contends that, even if the act-of-war exception is non-jurisdictional, it still presents a non-merits, threshold question that can be considered before personal jurisdiction. It is true that *Steel Co.*'s rule of priority does not invariably require considering a jurisdictional question before *any* non-jurisdictional issue. Rather, courts may address certain non-jurisdictional, threshold issues before examining jurisdictional

questions.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999); *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005).

But an issue can qualify as a threshold one of that kind only if it can occasion a "[d]ismissal short of reaching the merits."  *Sinochem*, 549 U.S. at 431.  In other words, a threshold question, while non-jurisdictional, still is not a merits question.  Examples of such threshold questions include abstention, forum non conveniens, third-party standing, and the so-called *Totten* rule (requiring dismissal at the outset of an action that depends on an "espionage relationship with the Government").  *See Tenet*, 544 U.S. at 6 n.4, 8; *Ruhrgas*, 526 U.S. at 585; *Pub. Citizen v. U.S. Dist. Court for D.C.*, 486 F.3d 1342, 1348-49 (D.C. Cir. 2007).

The ATA's act-of-war exception has little in common with those examples.  Determining whether the exception applies to a plaintiff's claim requires grappling with the central question under the ATA:  whether an act of terrorism (or act of war) occurred.  That determination amounts to an "adjudication of the cause," to which a court cannot proceed without first satisfying itself of its jurisdiction over the case. *Sinochem*, 549 U.S. at 431.  The act-of-war exception thus does not qualify as a threshold issue that may be considered before establishing the court's jurisdiction.

Amicus gets no further in attempting to align the act-of-war exception with the political-question doctrine.  The political-question doctrine speaks to a claim's justiciability, and we have previously held that it presents at least a non-merits, threshold issue that can be addressed before jurisdictional issues. *See Hwang Geum Joo v. Japan*, 413 F.3d 45, 47-48 (D.C. Cir. 2005).  The point of the doctrine is to identify questions that courts should not resolve—because, for instance, there is a "textually demonstrable constitutional

commitment of the issue" to another branch of government or a "lack of judicially discoverable and manageable standards for resolving" them. *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012).

Here, by contrast, there is no dispute that a court must determine whether the circumstances involve an act of war within the meaning of the statutory exception. That interpretive exercise, unlike with a non-justiciable political question, "is what courts do." *Id.* at 201. There is then no reason to treat the act-of-war exception as involving a threshold issue just because the political-question doctrine presents at least a threshold issue. Rather, the exception presents a merits question, one that the district court could not reach before assuring itself of its personal jurisdiction over the defendants.

D.

We turn, finally, to the district court's dismissal of the ATS claims. The Alien Tort Statute vests district courts with "original jurisdiction of any civil action" brought "by an alien for a tort only, committed in violation of the law of nations." 28 U.S.C. § 1350. The Supreme Court has established that "the presumption against extraterritoriality" governs the ATS's reach. *Kiobel v. Royal Dutch Petroleum Co*., 569 U.S. 108, 124 (2013). ATS claims involving extraterritorial activity can "displace the presumption" only if "the claims touch and concern the territory of the United States . . . with sufficient force." *Id*. at 124-25.

Here, the non-American plaintiffs sued the Banks under the ATS, alleging that the Banks' transfer of funds to Hezbollah aided and abetted Hezbollah's challenged actions. Applying the presumption against extraterritoriality as set out in *Kiobel*, the district court dismissed the ATS claims on the

ground that Hezbollah's rocket attacks did not sufficiently "touch and concern" the United States. *Kaplan*, 961 F. Supp. 2d at 205. The court considered its disposition on that ground to be a dismissal "for lack of subject matter jurisdiction." *Id.* at 204.

On appeal, the parties appear to assume that the question of extraterritoriality, in the context of the ATS, goes to subject-matter jurisdiction. If so, the district court could opt to resolve the claims on that jurisdictional ground without first assessing whether it had personal jurisdiction over the defendants: nothing in *Steel Co.* establishes an order of priority as between alternative jurisdictional grounds for disposing of a case. *See Ruhrgas*, 526 U.S. at 584. Because the parties assume that extraterritoriality is a jurisdictional issue under the ATS and that the district court thus was free to rest its dismissal on that ground, their arguments on appeal principally concern whether the district court correctly resolved the extraterritoriality question.

The Banks, however, also specifically preserved an argument that, as corporations, they cannot be held liable under the ATS. In doing so, they noted that the Supreme Court had granted review to consider that question in *Jesner v. Arab Bank, PLC*. The Court has since issued its decision in *Jesner*, holding that "foreign corporations may not be defendants in suits brought under the ATS." 138 S. Ct. 1386, 1407 (2018).

There is no dispute that the Banks are foreign corporations (Bank Saderat Iran is based in Iran, and Bank Saderat PLC, a wholly-owned subsidiary, is incorporated in England and Wales). Banks' Appellee Br. iii. In the wake of the Court's decision in *Jesner*, the Banks submitted a supplemental letter under Federal Rule of Appellate Procedure 28(j), contending that we could affirm the dismissal of the ATS claims against

24

the Banks based on *Jesner*. The plaintiffs did not submit a letter in response, and have not disputed that the Banks are foreign corporations for purposes of the *Jesner* rule.

Although the district court dismissed the ATS claims against the Banks based on the presumption against extraterritoriality, we have latitude to affirm the court's judgment on an alternative ground, i.e., that the ATS does not allow for claims against foreign corporations. *See EEOC v. Aramark Corp.*, 208 F.3d 266, 268 (D.C. Cir. 2000). But under *Steel Co.* and *Sinochem*, we can resolve the ATS claims on that ground only if it is either a jurisdictional limitation or a threshold, non-merits limitation like forum non conveniens or abstention. If, on the other hand, *Jesner*'s bar against foreign corporate liability involves a merits issue, the issue could be reached only after assuring the existence of personal jurisdiction.

We conclude that *Jesner*'s bar on foreign corporate liability under the ATS involves a non-merits disposition, such that we can rely on it without first assuring the existence of personal jurisdiction. *See Pub. Citizen*, 486 F.3d at 1348-49. In other words, the ATS bar against foreign corporate liability "[a]t a minimum" is a threshold basis for dismissal, which is enough to enable us to rest our decision on that ground. *Id.*

*Jesner*'s exclusion of foreign corporate liability under the ATS bears the hallmarks of a threshold limitation as opposed to a merits one. The limitation has the effect in ATS cases of "denying audience to [a] case on the merits." *Id.* (quoting *Sinochem*, 549 U.S. at 431). And it is "designed not merely to defeat the asserted claims, but to preclude judicial inquiry." *Id.* at 1347 (quoting *Tenet*, 544 U.S. at 6 n.4).

The Court's analysis in *Jesner* is instructive in that regard. The Court explained that, whereas the object of the ATS is to "promote harmony in international relations," allowing ATS actions against foreign corporations could have the "opposite" effect. 138 S. Ct. at 1406. For instance, Arab Bank, the defendant in *Jesner*, is "a major Jordanian financial institution." *Id.* And the ATS litigation against Arab Bank, which had lasted for 13 years, had "caused significant diplomatic tensions with Jordan, a critical ally in one of the world's most sensitive regions." *Id.* (internal quotation marks omitted). "As demonstrated by this litigation," the Court reasoned, "foreign corporate defendants create unique problems" vis-à-vis the conduct of foreign relations. *Id.* at 1407.

The Court barred ATS actions against foreign corporations to avoid the "serious foreign policy consequences" entailed by permitting such suits to proceed. *Id.* (internal quotation marks omitted). In doing so, the Court indicated it was acting on concerns about the pendency of ATS litigation against foreign corporations at all, not merely about the ultimate prospect of a judgment against a foreign corporation on the merits. In *Jesner* itself, the Court observed, the pendency of the litigation had caused "prolonged diplomatic disruptions." *Id.* And the bar against foreign corporate liability established in *Jesner* would afford a means of disposing of such cases at the outset, without the need to extend the proceedings for a more involved inquiry into questions like the "touch and concern" test for extraterritoriality. *See id.* at 1399 (plurality); *id.* at 1411 (Alito, J., concurring in part and concurring in the judgment). The bar as understood in *Jesner* thus aims to "preclude judicial inquiry" altogether, "not merely to defeat [ATS] claims" on the merits. *Tenet*, 544 U.S. at 6 n.4.

The interplay between the corporate liability and extraterritoriality issues in *Jesner* reinforces the foreign-corporate-liability bar's threshold character. The Court previously described the extraterritoriality rule for ATS cases as involving, not whether a complaint "state[s] a proper claim under the ATS," but instead "whether a claim may reach conduct occurring in the territory of a foreign sovereign." *Kiobel*, 569 U.S. at 115; *see Pub. Citizen*, 486 F.3d at 1348 (distinguishing between a "merits dismissal for failure to state a claim" and a threshold, non-merits disposition). And the Court observed that, although "the question of extraterritorial application" is typically a "merits question, not a question of jurisdiction," the "ATS, on the other hand, is strictly jurisdictional." *Kiobel*, 569 U.S. at 116 (internal quotation marks omitted). The Court, then, treated extraterritoriality in the ATS context as a jurisdictional matter. *See Doe v. Drummond Co.*, 782 F.3d 576, 584 (11th Cir. 2015) (holding that extraterritoriality under ATS is a jurisdictional issue); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 179 (2d Cir. 2014) (same); *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 524, 531 (4th Cir. 2014) (same).

In *Jesner*, the extraterritoriality issue had been raised, and the government urged the Court to remand the case for resolution of that issue. *See* 138 S. Ct. at 1398-99 (plurality). But the Court declined to do so, instead holding that foreign corporations are not subject to liability under the ATS. Insofar as extraterritoriality presents a jurisdictional issue in the context of the ATS, the Court could have bypassed that issue and reached the question of foreign corporate liability only if the latter issue were a non-merits one.

For those reasons, we conclude that *Jesner*'s bar against foreign corporate liability "[a]t a minimum," is a "non-merits threshold ground for dismissal" in the context of the ATS, on

which we can rely without resolving the existence of personal jurisdiction. *Pub. Citizen*, 486 F.3d at 1349; *cf. Doe*, 782 F.3d at 584 (holding that corporate liability under the ATS is a jurisdictional question); *Mastafa*, 770 F.3d at 179 (same).  We therefore affirm the district court's dismissal of the ATS claims against the Banks based on the Supreme Court's decision in *Jesner*.

*     *     *     *     *

For the foregoing reasons, we affirm the district court's dismissal of the plaintiffs' ATS claims against the Banks.  We vacate the district court's judgment dismissing the plaintiffs' ATA claims against Hezbollah and Bank Saderat PLC, and remand for the district court to determine whether it has personal jurisdiction over the defendants.

*So ordered.*

EDWARDS, *Senior Circuit Judge*, concurring: I join the opinion of the court in full. As Judge Srinivasan cogently explains, *Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007), confirms that the rule of priority the Supreme Court announced in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), extends to personal jurisdiction.

I write separately to express my concern over two decisions of this court – *Kramer v. Gates*, 481 F.3d 788 (D.C. Cir. 2007), and *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725 (D.C. Cir. 2008) – that appear to interpret *Steel Co.*'s rule that a court must resolve jurisdictional issues prior to reaching the merits to apply only to "those primary issues related to Article III jurisdiction." *Kramer*, 481 F.3d at 791; *see also Chalabi*, 543 F.3d at 728 ("*Steel Co.* requires that we prioritize the jurisdictional issue only when the existence of *Article III* jurisdiction is in doubt . . . ."). Our decision today properly distinguishes *Chalabi* and *Kramer*. Nevertheless, I think it is important to point out that *Chalabi* and *Kramer*, and the authorities on which they rely, do not follow the core principles that we have applied in reaching judgment in this case.

The references to "Article III jurisdiction" in the *Chalabi* and *Kramer* decisions seem to be limited to case-and-controversy requirements under Article III (*e.g.*, standing and mootness), as distinguished from questions relating to "statutory jurisdiction" (*e.g.*, jurisdictional time limits). Thus, in *Kramer*, we held that "issues related to . . . a statutory limit (even one classified as jurisdictional for many purposes)" are not primary under *Steel Co.* 481 F.3d at 791; *see also Chalabi* (stating that "[t]here is no Article III question here: [the plaintiff's claim] concerns only the limits of our statutory jurisdiction under the . . . Act"). The judgments in these cases appear to be correct when viewed with reference to the law extant at the time when the decisions were issued. The law has

evolved, however, so I doubt that we can now say that a lack of statutory jurisdiction need not be a barrier to deciding issues on the merits.

Conceptually, this is unsurprising. Under Article III, jurisdiction is limited both by the bounds of the "judicial power" as articulated in Article III, § 2, and by the extent to which Congress has vested that power in the lower courts, *see* U.S. CONST. art. III, § 1. The distinction between statutory limitations on subject-matter jurisdiction and other Article III jurisdictional limitations is tenuous, as both limitations arise from Article III.

It is true that the Supreme Court has, at times, discussed the requirements of subject-matter jurisdiction in a manner that separates statutory authorization from constitutional authorization. *See, e.g.*, *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) ("[Courts] possess only that power authorized by Constitution and statute."). But this merely highlights that both requirements exist; it does not intimate that the requirements delineated in a statutory grant of jurisdiction are any less a constraint on courts' power than the requirements described directly in the Constitution.

In any event, the *Kramer/Chalabi* interpretation of *Steel Co.* appears to conflict with current Supreme Court precedent. That precedent indicates that the existence of statutory subject-matter jurisdiction, like other jurisdictional requirements, must be established before a court may reach an issue on the merits. The Court has not distinguished between statutory and Article

III subject-matter jurisdiction for this purpose. The Court makes this point clear in *Sinochem*:

> [*Steel Co.*] clarified that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction). Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case.

> While *Steel Co.* confirmed that jurisdictional questions ordinarily must precede merits determinations in dispositional order, *Ruhrgas* held that there is no mandatory sequencing of jurisdictional issues. In appropriate circumstances, *Ruhrgas* decided, a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction.

> Both *Steel Co.* and *Ruhrgas* recognized that a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits. Dismissal short of reaching the merits means that the court will not proceed at all to an adjudication of the cause.

549 U.S. at 430–31 (citations and internal quotation marks omitted). The Court's citation to *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999), is significant. In that case, the lower court failed to decide a statutory jurisdiction issue before addressing personal jurisdiction. *Id.* at 580–81. In holding that there is no mandatory ordering of *jurisdictional* issues, the Court clearly treated the issue of whether a claim fits within a

4

statutory grant of subject-matter jurisdiction as being covered by the *Steel Co.* rule of priority.

Thus, under *Steel Co.*, a court without jurisdiction lacks "*power* to adjudicate the case" and, thus, may not act to decide the merits of the case. *See* 523 U.S. at 89. This principle applies equally whether jurisdiction is lacking because there is no case or controversy, or because Congress has declined to grant a lower court jurisdiction over a category of cases. Just as a plaintiff's lack of standing deprives the court of power to say what the law is, so too does Congress's decision to withhold power from the court. *See Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

It is a bit of an aside, but not insignificant, that the Court's decision in *Sinochem* also expanded upon *Steel Co.*'s observation that there is no "absolute purity" in the rule that *jurisdiction* is always an antecedent question. *Steel Co.*, 523 U.S. at 101. In fleshing out this point, *Sinochem* holds that *forum non conveniens* – a nonjurisdictional issue – can be decided prior to matters of jurisdiction. The Court explained that

> [a] *forum non conveniens* dismissal denies audience to a case on the merits; it is a determination that the merits should be adjudicated elsewhere. . . . A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.

549 U.S. at 432 (citations and internal quotation marks

omitted). The Court held that "a district court has discretion to respond at once to a . . . *forum non conveniens* plea, and need not take up first any other threshold objection [such as] . . . whether it has authority to adjudicate the cause." *Id*. at 425.

> No one would contend that *forum non conveniens* constitutes a jurisdictional ground for dismissal. Indeed, the *Sinochem* decision refers to a district court's "discretion to" dismiss pursuant to the doctrine. *Sinochem* thus firmly establishes that certain non-merits, nonjurisdictional issues may be addressed preliminarily, because [j]urisdiction is vital only if the court proposes to issue a judgment on the merits.

*Pub. Citizen v. U.S. Dist. Court for D.C.*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (citations and some quotation marks omitted).

It is unclear whether there is any meaningful symmetry between "non-merits, nonjurisdictional" and "jurisdictional" grounds for dismissal. Judgments on *forum non conveniens*, for example, are reviewed pursuant to a deferential abuse of discretion standard, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981), whereas judgments on jurisdictional issues are reviewed *de novo*, *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). And district court judges are not obliged to decide non-merits, nonjurisdictional issues such as *forum non conveniens* before addressing the merits. Therefore, if one assumes that *Steel Co.* deals solely with jurisdiction limitations, then *forum non conveniens* and other non-merits, nonjurisdictional issues can be viewed as an exception to *Steel Co.*'s rule of priority.

In addition, there are some "non-merits threshold ground[s] for dismissal" that have the attributes of jurisdictional issues. *Pub. Citizen*, 486 F.3d at 1348–49

(pondering whether dismissal pursuant to the enrolled bill rule enunciated in *Marshall Field & Co. v. Clark*, 143 U.S. 649 (1892), is a "jurisdictional bar"). It is unclear whether these issues should be treated as "jurisdictional" or "non-merits, nonjurisdictional" issues. The difference is that a court cannot proceed to the merits if there are jurisdictional issues to be addressed; however, a court need not address non-merits, nonjurisdictional issues before deciding the merits.

The *Steel Co.* rule is thus now best understood to require the federal courts to decide *jurisdictional* issues first before reaching the merits, unless dismissal is based on a threshold non-merits, nonjurisdictional ground. *See Sinochem*, 549 U.S. at 432. And, as the Court explained in *Sinochem*, there is no priority given to "Article III jurisdiction" over "statutory jurisdiction." *Id.* at 430–31. Indeed, a court may decide a non-merits, nonjurisdictional issue before a jurisdictional issue if it will dispose of the case. This current state of the law does not fit with the *Kramer/Chalabi* interpretation of *Steel Co.*

There is one final point worth mentioning with regard to the *Kramer/Chalabi* application of *Steel Co.* Both *Kramer* and *Chalabi* relied on a footnote in *Steel Co.* that they say "explicitly recognized the propriety of addressing the merits where doing so made it possible to avoid a doubtful issue of *statutory* jurisdiction." *Kramer*, 481 F.3d at 791; *Chalabi*, 543 F.3d at 728. There are two problems with this analysis. First, the footnote in *Steel Co.* that is cited by *Kramer* and *Chalabi* discusses "statutory standing," not "statutory jurisdiction." *Steel Co.*, 523 U.S. at 97 & n.2. And, as the Court explained in *Steel Co.*, "statutory standing" is quite different from "statutory jurisdiction." *See id.* at 91–92 (discussing statutory standing and statutory jurisdiction). "Statutory standing," as the term was used in *Steel Co.*, and other cases, concerned a party's cause of action, not the court's jurisdiction.

Second, in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), the Court clarified the law in explaining that "statutory standing," which was formerly associated with the question as to whether a plaintiff's claim fell within a statute's "zone of interests," is a misnomer. "Statutory standing," the Court explained, is a "misleading" reference to cause of action, and "cause of action" "does not implicate subject-matter jurisdiction." *Id.* at 1387 n.4. Because "statutory standing" issues are not jurisdictional at all, they obviously fall outside of the *Steel Co.* rule of priority for jurisdictional issues. Again, this current state of the law cannot be squared with the *Kramer/Chalabi* understanding of *Steel Co.* and the rule of priority emanating from that decision.

It may be that *Kramer* and *Chalabi* intended only to differentiate between types of "statutory jurisdiction" issues, drawing a line between those that must be decided first, such as federal question or diversity jurisdiction, and those that need not, such as waivers of sovereign immunity under a specific statute. *See Kramer*, 481 F.3d at 791 (skipping over sovereign immunity issue); *Chalabi*, 543 F.3d at 728 (skipping over foreign sovereign immunity issue). *But see FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature."). And it may be that for reasons specific to the issues in those cases, their outcomes can be squared with the case law described above. But at the very least, the court's language interpreting *Steel Co.* appears to run head on into Supreme Court precedent. At an appropriate opportunity, the court should consider whether, in light of *Sinochem* and *Lexmark*, the *Kramer/Chalabi* distinction between statutory and Article III jurisdictional issues can be sustained.