Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/07/2025 09:12 AM CST

Sherrets Bruno & Vogt LLC, appellant,
v. Timothy E. Montoya, appellee.

___ N.W.3d ___

Filed March 7, 2025.    No. S-23-1059.

1. **Jurisdiction.** A question of jurisdiction is a question of law.
2. **Judgments: Appeal and Error.** An appellate court reviews questions of law independently of the lower court's conclusion.
3. **Default Judgments: Pleadings: Appeal and Error.** Whether default judgment should be entered because of a party's failure to timely respond to a petition rests within the discretion of the trial court, and an abuse of discretion must affirmatively appear to justify a reversal on such a ground.
4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
5. **Motions to Dismiss: Jurisdiction: Pleadings.** When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion.
6. **Jurisdiction: Appeal and Error.** An appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.
7. **Motions to Dismiss: Appeal and Error.** In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.
8. **Jurisdiction: Words and Phrases.** Personal jurisdiction is the power of a tribunal to subject and bind a particular person or entity to its decisions.
9. **Jurisdiction: Waiver.** While the lack of subject matter jurisdiction cannot be waived nor the existence of subject matter jurisdiction conferred

by the consent or conduct of the parties, lack of personal jurisdiction may be waived and such jurisdiction conferred by the conduct of the parties.

10. **Waiver: Words and Phrases.** "Waiver" of a right is voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct.

11. **Jurisdiction: Waiver.** Because the requirement of personal jurisdiction represents an individual right, it can, like other such rights, be waived.

12. ____: ____. In order to be valid, the waiver of the requirement of personal jurisdiction must, at the very least, be clear.

13. **Jurisdiction.** One who invokes the power of the court on an issue other than the court's jurisdiction over one's person makes a general appearance so as to confer on the court personal jurisdiction over that person.

14. **Rules of the Supreme Court: Pleadings.** Nebraska courts will look to federal decisions interpreting corresponding federal rules for guidance in interpreting similar Nebraska civil pleading rules.

15. **Jurisdiction: Service of Process: States.** An objection to personal jurisdiction is not waived by default when a nonresident fails to respond to process served out of state and does not appear.

16. **Jurisdiction: Default Judgments.** A trial court has the discretion to refuse to enter a default judgment when it is unclear whether the court has personal jurisdiction over the defendant.

17. ____: ____. A trial court may raise personal jurisdiction on its own motion when deciding whether to enter a default judgment because the defendant has failed to appear. But before resolving the personal jurisdiction question and declining to enter a default judgment, the court must first give the plaintiff an adequate opportunity to assert facts establishing the court's jurisdiction over the defendant.

18. **Jurisdiction: Default Judgments: Dismissal and Nonsuit.** As a general rule, a plaintiff is not required to make a prima facie showing of personal jurisdiction in order to obtain a default judgment. However, a trial court has the discretion to require the plaintiff to make such a showing if, on the face of the complaint, the court has a basis for questioning the existence of personal jurisdiction. If the plaintiff is unable to make a prima facie showing of personal jurisdiction, then the court may avoid entering a void judgment by denying the motion for the entry of a default judgment and dismissing the action.

19. **Jurisdiction.** A trial court should not raise personal jurisdiction on its own motion when a defendant has appeared or consented, voluntarily or not, to the jurisdiction of the court.

20. **Constitutional Law: Jurisdiction: States.** Nebraska's long-arm statute extends Nebraska's jurisdiction over nonresidents having any

contact with or maintaining any relation to this state as far as the U.S. Constitution permits.

21. **Constitutional Law: Jurisdiction: Statutes: Due Process.** If a Nebraska court's exercise of personal jurisdiction would comport with the Due Process Clause of the 14th Amendment, it is authorized by the long-arm statute.

22. **Constitutional Law: Jurisdiction: Due Process: Service of Process: States.** Courts' ability to validly exercise personal jurisdiction is not without limit. The Due Process Clause of the 14th Amendment to the U.S. Constitution bars a court from exercising personal jurisdiction over an out-of-state defendant, served with process outside the state, unless that defendant has sufficient ties to the forum state.

23. **Jurisdiction: States.** The constitutional touchstone for personal jurisdiction over a nonresident is whether the defendant purposefully established minimum contacts in the forum state.

24. ____: ____. The minimum contacts requirement protects the defendant against litigating in a distant or inconvenient forum and ensures that states do not exceed the limits imposed by their status as coequal sovereigns in a federal system.

25. **Jurisdiction.** There are two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.

26. **Jurisdiction: States.** To be subject to specific personal jurisdiction of a state, a nonresident defendant must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum state, and the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum.

27. **Due Process: Jurisdiction: States.** The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there.

28. ____: ____: ____. The analysis of whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there is not simply mechanical or quantitative, but requires that a court consider the quality and nature of the defendant's activities to ascertain whether the defendant has the necessary minimum contacts with the forum to satisfy due process.

29. **Jurisdiction: Words and Phrases.** For specific personal jurisdiction, there must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation.

30. **Jurisdiction: States.** Unilateral activity of a plaintiff who claims some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.

31. \_\_\_\_: \_\_\_\_. While mail and telephone communications sent by a defendant into a forum may count toward the minimum contacts that support jurisdiction, the mere use of interstate facilities, such as telephones and mail, does not, in and of itself, provide the necessary contacts for personal jurisdiction.

Appeal from the District Court for Douglas County, PETER C. BATAILLON, Judge. Affirmed.

Guillermo M. Martinez and Jason M. Bruno, of Sherrets Bruno & Vogt LLC, for appellant.

No appearance by appellee.

FUNKE, C.J., MILLER-LERMAN, CASSEL, STACY, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## INTRODUCTION

A law firm sued an out-of-state defendant for failure to pay his ex-wife's attorney fees (for services by that law firm) pursuant to an out-of-state divorce settlement. After the defendant failed to appear, the district court overruled the law firm's motion for default judgment and sua sponte dismissed the case for lack of personal jurisdiction. The law firm appeals, presenting novel arguments that (1) the defendant waived any defense of personal jurisdiction by default and (2) the court erred in raising personal jurisdiction on its own motion. We reject both arguments and affirm the district court's final order.

## BACKGROUND

### COMPLAINT

Sherrets Bruno & Vogt LLC (SBV) sued Timothy E. Montoya in the district court for Douglas County, Nebraska, seeking to collect unpaid attorney fees.

According to the complaint, this action stems from an out-of-state divorce settlement. The complaint alleged the following facts: Montoya and his ex-wife divorced in Arizona. SBV is a Nebraska limited liability company and law firm that represented the ex-wife in the dissolution case. As part of the settlement of the divorce, Montoya agreed to pay SBV the attorney fees incurred by the ex-wife in the divorce. Montoya also agreed to a decree of dissolution—which was entered by an Arizona court in 2017—that ordered him to pay the ex-wife's attorney fees in monthly installments. Montoya failed to make the payments.

Other allegations in the complaint are particularly relevant to the overarching issue on appeal—the district court's personal jurisdiction over Montoya. The complaint alleged that Montoya is an Arizona resident and that he "knowingly entered into an agreement with and promised to pay SBV while it was located in Douglas County, and Montoya has initiated communications with SBV in Douglas County regarding this matter." It further alleged that SBV had "contacted" Montoya about the payments and that Montoya had "reached out to SBV directly" to promise the payments were forthcoming. However, he "failed to make any payments" and "ignored SBV's communications and demands for payment" from then on.

## Motion for Default Judgment

The transcript includes a summons and a service return showing that SBV served Montoya by personal service in Arizona. Montoya failed to file an answer or other response to the complaint within the statutory period,[1] and he did not enter an appearance at any point.

---

[1] See Neb. Ct. R. Pldg. § 6-1112 (rev. 2025) (generally, "[a] defendant must serve an answer within 30 days after being served with the summons and complaint," and motion asserting defense of lack of personal jurisdiction "must be made before pleading if a responsive pleading is allowed").

Two months later, SBV filed a motion for default judgment.[2] The court held a hearing on the motion and received as evidence two affidavits of SBV's member, Jason M. Bruno, and attached exhibits.

From the outset, the court expressed doubt that it had jurisdiction over Montoya. The court asked SBV, "[D]id the divorce decree say that [Montoya] subjected himself to the jurisdiction of Nebraska?" SBV responded that it did not know whether such language was in the decree, but it said that Montoya "knew the whole time that [its] office was actually based . . . in Omaha" and that Montoya agreed to pay the attorney fees there. In SBV's view, "[b]y agreeing to pay . . . attorney fees to [its] office, which [Montoya] knew was based out of Omaha," Montoya had subjected himself to the court's jurisdiction. SBV also mentioned "follow-up conversations with [Montoya]," though it did not specify how, when, or where they occurred. The court asked whether SBV had an office in Arizona, and SBV confirmed that it did.

Following a continuance, Bruno appeared at the hearing on behalf of SBV. The following exchange took place on the record:

> THE COURT: All right. So tell me about your motion for default, please.
>
> . . . BRUNO: Okay, motion for default. I represented [Montoya's] ex-wife . . . in a divorce in Arizona. The parties mediated. I was there. As part of their deal . . . Montoya was to pay the attorneys fees that [his ex-wife] owed directly to us. So we had an agreement. As part of that agreement we actually agreed to reduce our fees, and subsequent to the mediation and the divorce decree I had direct communications with . . . Montoya's counsel at the time.

---

[2] See, Neb. Rev. Stat. § 25-1308 (Reissue 2016); Neb. Ct. R. § 6-1508 (rev. 2022).

THE COURT: In Arizona?

. . . BRUNO: No, in Nebraska. I was getting calls in Nebraska at my Nebraska office, my Nebraska phone number.

Subsequent to that, she got out of the deal and I had a few conversations with . . . Montoya directly. I can't remember how many. But he had called me at least once to my Arizona — or to my Nebraska cell phone number, my Nebraska office. But more importantly, he agreed to begin making payments to my Omaha office.

My supplemental affidavit, which I think the Court requested, shows one of those voice messages from . . . Montoya as well as gives some detailed history about the case and some additional evidence including about the connection to Nebraska.

At this point, Bruno offered his "supplemental affidavit" and attached exhibits. The exchange continued:

[THE COURT:] Bruno, why do I have jurisdiction? Why does Nebraska have jurisdiction since it looks like all the actions took place in Arizona? The divorce took place in Arizona. The agreement for [Montoya] to pay the attorney fee and the order for him to pay the attorney fee were in Scottsdale, Arizona.

. . . BRUNO: Because the agreement that he entered into, entered into with somebody who knew was a Nebraska law firm, or at least in part, he made direct communications into Nebraska for the specific purpose of abiding by that agreement. He made calls and left voice messages in Nebraska. But most importantly, his agreement was to make payments into the state of Nebraska and that's the agreement he defaulted on and that's why we're here today.

All you need is minimum contacts. You may not have general jurisdiction over . . . Montoya because he doesn't regularly do business, but you have specific jurisdiction

because regarding this agreement and his obligation which he acknowledged to me in a voicemail made on my Omaha office voicemail was directed at this state, and that's why.

THE COURT: When he called you on your cell phone, which is an Omaha number, were you in Arizona then?

. . . BRUNO: To be honest with you, Your Honor, I can't tell you. I don't remember. But I can tell you when he called me in my office Omaha when I would answer I was there.

THE COURT: There, yeah.

. . . BRUNO: And the voice message was left on my Nebraska office. But when I talked to him on my cell, I can't — I can't tell the Court one way or the other. I just don't remember.

THE COURT: All right.

Attached to the affidavits were the service return; a "Notice of Attorney Lien" that SBV submitted to the Arizona court in the dissolution case; the decree of dissolution of marriage entered by the Arizona court; written communications in 2018 between Bruno, on behalf of SBV, and Montoya's divorce attorney; and documents pertaining to a voicemail.

As relevant here, the decree of dissolution ordered Montoya to "pay to [his ex-wife] or her previous lawyer"—whom the decree identified as Bruno—"the sum total of $6,700.00" for attorney fees, which was consistent with the amount SBV sought in the complaint. There was nothing in the decree or the documents attached to it indicating that Montoya agreed to make payments to an office in Nebraska or that he agreed to litigate there.

From the communications with Montoya's divorce attorney, we can discern that the voicemail marked the first time Montoya reached out to SBV directly.

It appears that the only aspect of the voicemail that is particularly relevant here was the telephone number to which the

call was placed. In his supplemental affidavit, Bruno alleged that Montoya left the voicemail on Bruno's "Omaha voice mail box at [a telephone number with a '402' area code]." From a transcription of the voicemail prepared by SBV, we learn that Montoya received a letter written by SBV from his attorney, requested that the parties set up "payment arrangements," and expressed a desire to avoid litigation, but he said nothing linking himself, or his situation, to Nebraska.

The supplemental affidavit alleged that after receiving the voicemail, Bruno "communicated with [Montoya] several times" regarding "his obligation." Bruno asserted that Montoya "informed me he would immediately start making regular payment to my office in Omaha, Nebraska," and that Montoya "agreed that he would provide payments and deliver them to my Omaha office." He alleged, "[Montoya] called me at least two or three times that I can recall either on my Omaha cell phone or at my Omaha office number."

### Dismissal for Lack of Personal Jurisdiction

The court entered two orders and ultimately dismissed the action, on its own motion, for lack of personal jurisdiction.

In the first order chronologically, the court found it did not have personal jurisdiction over Montoya and overruled the motion for default judgment. It reasoned:

> In the case at bar, it is obvious that any contact [Montoya] had with the state of Nebraska did not rise to the level of personal jurisdiction. The only contact were phone calls to . . . Bruno's Nebraska phone number. This assumes that . . . Bruno was in Nebraska when he received the phone call from [Montoya].

According to the order, the court set the matter for further hearing "to determine the status of this case and whether it should be dismissed." No record was made of that hearing.

In the subsequent order, from which SBV appeals, the court stated it "reviewed the pleading and the evidence presented by [SBV]" and found, again, that it lacked personal

jurisdiction over Montoya. It refused to enter a default judgment and dismissed the case for lack of personal jurisdiction.

SBV filed a timely appeal, which we moved to our docket.[3] Montoya did not file a brief and is in default.[4]

## ASSIGNMENTS OF ERROR

SBV assigns, rephrased, that the district court erred in (1) "raising personal jurisdiction *sua sponte* on behalf of a defaulted party who had waived that affirmative defense," (2) overruling the motion for default judgment, and (3) dismissing the case for lack of personal jurisdiction.

## STANDARD OF REVIEW

[1,2] A question of jurisdiction is a question of law.[5] An appellate court reviews questions of law independently of the lower court's conclusion.[6]

[3,4] Whether default judgment should be entered because of a party's failure to timely respond to a petition rests within the discretion of the trial court, and an abuse of discretion must affirmatively appear to justify a reversal on such a ground.[7] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[8]

[5-7] We have not previously considered the applicable standard of appellate review for a trial court's sua sponte dismissal for lack of personal jurisdiction at the default

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[4] See Neb. Ct. R. App. P. § 2-110 (rev. 2022).

[5] *Arnold v. Walz*, 306 Neb. 179, 944 N.W.2d 747 (2020).

[6] *Herman v. Peter Tonn Enters., ante* p. 52, 13 N.W.3d 177 (2024).

[7] *Buttercase v. Davis*, 313 Neb. 1, 982 N.W.2d 240 (2022), *modified on denial of rehearing* 313 Neb. 587, 985 N.W.2d 588 (2023).

[8] *132 Ventures v. Active Spine Physical Therapy, ante* p. 64, 13 N.W.3d 441 (2024).

judgment stage. The procedural posture is important. Because the district court relied solely on the complaint and supporting affidavits, we apply this familiar standard:

> When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion. . . .
>
> An appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.
>
> In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.[9]

In this instance, for purposes of the standard of review, the "nonmoving party" refers to SBV.

## ANALYSIS

[8] This appeal centers on personal jurisdiction. Personal jurisdiction is the power of a tribunal to subject and bind a particular person or entity to its decisions.[10]

SBV's primary argument is that the court erred in failing to find that Montoya waived the defense of personal jurisdiction. Based on the waiver argument, SBV contends that the court erred in raising personal jurisdiction on its own motion and overruling the motion for default judgment. Finally, SBV argues that even if Montoya did not waive the issue, personal jurisdiction was established by SBV's complaint and evidence, so the court erred in dismissing the case for lack of personal jurisdiction. We discuss each argument in turn.

---

[9] *Griffith v. LG Chem America*, 315 Neb. 892, 899-900, 1 N.W.3d 899, 908-09 (2024) (citations omitted).

[10] *Lanham v. BNSF Railway Co.*, 305 Neb. 124, 939 N.W.2d 363 (2020), *modified on denial of rehearing* 306 Neb. 124, 944 N.W.2d 514.

## Personal Jurisdiction Over Nonresident
## Not Waived by Default

[9] SBV contends, in essence, that Montoya waived the defense of personal jurisdiction by default. SBV rightly points out that while the lack of subject matter jurisdiction cannot be waived nor the existence of subject matter jurisdiction conferred by the consent or conduct of the parties, lack of personal jurisdiction may be waived and such jurisdiction conferred by the conduct of the parties.[11]

The premise of SBV's argument is Neb. Ct. R. Pldg. § 6-1112(h)(1), which provides, in relevant part:

A party waives any defense listed in § 6-1112(b)(2), [referring to lack of personal jurisdiction,] by:

. . . .

(B) failing either:

(i) to make it by motion under this rule; or

(ii) to include it in a responsive pleading or in an amendment allowed by § 6-1115(a)(1) as a matter of course.

Because a recent amendment to the rule did not make substantive changes to the provisions above, we have quoted the current version.[12] Relying on this rule, SBV argues that Montoya waived any defense of personal jurisdiction because he failed to make it by a § 6-1112 motion and did not include it in a responsive pleading, so the court erred in raising the issue on its own motion.

But we question the application of § 6-1112(h) in a situation where, as here, a nonresident wholly fails to respond to a complaint and defaults. In other words, can it be said that Montoya omitted the defense of personal jurisdiction from a motion or responsive pleading where none was filed? This appears to be an issue of first impression in Nebraska.

---

[11] *Hunt v. Trackwell*, 262 Neb. 688, 635 N.W.2d 106 (2001).

[12] Compare § 6-1112(h) (rev. 2008), with § 6-1112(h) (rev. 2025).

[10-12] Before examining the law elsewhere, we note that there is some tension between the notion of waiver by default and our jurisprudence. We have recognized that under federal and Nebraska law, "waiver" of a right is voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct.[13] Because the requirement of personal jurisdiction represents an individual right, it can, like other such rights, be waived.[14] In order to be valid, the waiver of the requirement of personal jurisdiction must, at the very least, be clear.[15]

[13] Our cases provide guidance on the types of conduct by which a clear waiver may be demonstrated or from which it may be inferred. We have said that one who invokes the power of the court on an issue other than the court's jurisdiction over one's person makes a general appearance so as to confer on the court personal jurisdiction over that person.[16] Thus, a party will be deemed to have appeared generally if, by motion or other form of application to the court, he or she seeks to bring its powers into action on any matter other than the question of jurisdiction over that party.[17] For example, a party that files an answer generally denying the allegations of a petition invokes the court's power on an issue other than personal jurisdiction and confers on the court personal jurisdiction.[18]

---

[13] *Kingery Constr. Co. v. 6135 O St. Car Wash*, 312 Neb. 502, 979 N.W.2d 762 (2022).

[14] *Northern Nat. Gas Co. v. Centennial Resource Prod.*, 316 Neb. 263, 4 N.W.3d 185 (2024), *cert. denied* ___ U.S. ___, 145 S. Ct. 170, ___ L. Ed. 2d ___.

[15] *Lanham v. BNSF Railway Co., supra* note 10 (citing *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972)).

[16] *Herman v. Peter Tonn Enters., supra* note 6.

[17] *Id.*

[18] *Hunt v. Trackwell, supra* note 11.

Here, the record shows that Montoya was in default for failing to file a motion or an answer within the statutory period, and he did not otherwise appear. SBV does not argue that Montoya sought to bring the court's powers into action at any point. The question then is whether a clear waiver of his right was demonstrated by or inferred from his default.

[14] Federal decisions provide some guidance on this issue. Nebraska courts will look to federal decisions interpreting corresponding federal rules for guidance in interpreting similar Nebraska civil pleading rules.[19] Fed. R. Civ. P. 12(h) is similar to our § 6-1112(h).

It appears to be the prevailing view that there can be no waiver of lack of personal jurisdiction where a party has defaulted and made no appearance before the court.[20] A treatise has provided the following solution:

> An objection to personal jurisdiction may raise constitutional issues, and the non-appearance of the defendant should not constitute a waiver of that defense. Indeed, if there has been a failure of due process, that objection may permit relief from any judgment that has been entered or may be raised on collateral attack.[21]

Consistent with that sentiment, the U.S. Supreme Court has said, "A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding."[22]

---

[19] *Denali Real Estate v. Denali Custom Builders*, 302 Neb. 984, 926 N.W.2d 610 (2019).

[20] See, 5C Charles Alan Wright et al., Federal Practice and Procedure § 1391 (3d ed. 2004 & Supp. 2024); C. Ronald Ellington, *Unraveling Waiver By Default*, 12 Ga. L. Rev. 181, 187 (1978) ("[v]iewed properly, rule 12(h) operates to waive the defense of lack of personal jurisdiction by a defendant who *appears* but fails to assert that defense in timely fashion").

[21] 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 at 522 (3d ed. 2004). See, also, Restatement (Second) of Judgments § 81 (1982).

[22] *Insurance Corp. v. Compagnie des Bauxites*, 456 U.S. 694, 706, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982).

[15] Likewise, our cases have recognized that a party in default may request to vacate a default judgment where he or she can tender proof disclosing a meritorious defense, such as lack of personal jurisdiction.[23] In this regard, our cases have long recognized, at least implicitly, that an objection to personal jurisdiction is not waived by default when a nonresident fails to respond to process served out of state and does not appear. We now do so explicitly.

Having rejected the notion of waiver by default, we conclude that Montoya did not waive his defense of personal jurisdiction in these circumstances.

### Court Had Authority to Sua Sponte Raise Personal Jurisdiction When Deciding Motion for Default Judgment

We turn to the other novel issue: whether a trial court can raise personal jurisdiction on its own motion when deciding a request for default judgment because the defendant has failed to appear. SBV argues that a court cannot do so. Based on the weight of authority holding otherwise, we disagree.

It appears to be generally accepted elsewhere that a court may sua sponte raise personal jurisdiction when deciding a motion for default judgment because the defendant has failed to appear.[24] Some jurisdictions have held that there is an "affirmative duty" to do so.[25] A common rationale is that a

---

[23] See, e.g., *Herman v. Peter Tonn Enters., supra* note 6; *Miller v. Steichen*, 268 Neb. 328, 682 N.W.2d 702 (2004); *Ivaldy v. Ivaldy*, 157 Neb. 204, 59 N.W.2d 373 (1953).

[24] See 4 Charles Alan Wright et al., Federal Practice and Procedure § 1063 (4th ed. 2015).

[25] See, e.g., *System Pipe & Supply v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322 (5th Cir. 2001); *In re Tuli*, 172 F.3d 707 (9th Cir. 1999); *Williams v. Life Sav. and Loan*, 802 F.2d 1200 (10th Cir. 1986). See, also, *Kaplan v. Central Bank of Islamic Republic of Iran*, 896 F.3d 501 (D.C. Cir. 2018); *Employees' Retirement System v. Pendergrass*, 344 Ga. App. 888, 812 S.E.2d 322 (2018).

judgment entered without personal jurisdiction is void[26]—a principle that this court has recognized and applied in other contexts.[27]

A treatise on federal practice and procedure has posited:

> Although the district court usually faces the issue of personal jurisdiction on a Rule 12(b)(2)[28] motion by the defendant, it also may raise the question sua sponte when deciding whether to enter a default judgment because the defendant has failed to appear. However, the district court may not resolve the personal jurisdiction question and decline to enter a default judgment without first giving the plaintiff an adequate opportunity to assert facts establishing the court's jurisdiction over the defendant.[29]

[16] Another legal commentator has suggested that in Nebraska, a trial court has the discretion to "refuse to enter a default judgment when it is unclear whether the court has personal jurisdiction over the defendant."[30] Given the applicable standard of review,[31] we adopt that view. The legal commentator has proposed the following approach, which we find persuasive:

> As a general rule, plaintiffs should not be required to make a prima facie showing of personal jurisdiction in order to obtain a default judgment—but the trial court should have the discretion to require the plaintiff to make such a showing if the court has a basis for questioning the

---

26 See, e.g., *System Pipe & Supply v. M/V VIKTOR KURNATOVSKIY, supra* note 25; *In re Tuli, supra* note 25; *Williams v. Life Sav. and Loan, supra* note 25.

27 See, *Francisco v. Gonzalez*, 301 Neb. 1045, 921 N.W.2d 350 (2019); *Johnson v. Johnson*, 282 Neb. 42, 803 N.W.2d 420 (2011); *Cave v. Reiser*, 268 Neb. 539, 684 N.W.2d 580 (2004).

28 Cf. § 6-1112(b)(2).

29 4 Wright et al., *supra* note 24, § 1063 at 331-33.

30 John P. Lenich, Nebraska Civil Procedure § 33:4 at 1498 (2024).

31 See *Buttercase v. Davis, supra* note 7.

existence of personal jurisdiction. For example, a court might have a basis for questioning personal jurisdiction in a case involving a product liability claim against a foreign manufacturer or a negligence claim against an out-of-state driver arising out of an out-of-state accident. If the plaintiff is unable [to] prove that the court had personal jurisdiction, then the court could avoid entering a void judgment by denying the motion for the entry of a default judgment and dismissing the action.[32]

[17] We now hold that a trial court may raise personal jurisdiction on its own motion when deciding whether to enter a default judgment because the defendant has failed to appear. But before resolving the personal jurisdiction question and declining to enter a default judgment, the court must first give the plaintiff an adequate opportunity to assert facts establishing the court's jurisdiction over the defendant.

[18] We further hold that, as a general rule, a plaintiff is not required to make a prima facie showing of personal jurisdiction in order to obtain a default judgment. However, a trial court has the discretion to require the plaintiff to make such a showing if, on the face of the complaint, the court has a basis for questioning the existence of personal jurisdiction. If the plaintiff is unable to make a prima facie showing of personal jurisdiction, then the court may avoid entering a void judgment by denying the motion for the entry of a default judgment and dismissing the action.

[19] In adopting this framework, we reject the view that a trial court has an affirmative duty to raise personal jurisdiction at the default judgment stage. Generally, if an individual is personally served in Nebraska, the proof of service will establish that the statutory and constitutional requirements are met.[33] But proof of service will not establish that

---

[32] Lenich, *supra* note 30, § 33:4 at 1499-1500.

[33] See, generally, Lenich, *supra* note 30, § 3:8 (discussing general jurisdiction over individuals).

the requirements are met for all defendants—for example, Montoya, who is a nonresident and was served in another state. In these circumstances, our framework places the inquiry within the trial court's discretion. On the other hand, a trial court should not raise personal jurisdiction on its own motion when a defendant has appeared or consented, voluntarily or not, to the jurisdiction of the court.

Applying our framework to the instant case, we conclude that the court did not abuse its discretion in overruling SBV's motion for default judgment. On the face of the complaint, the court had reason to question the existence of personal jurisdiction over Montoya. According to SBV, Montoya was a nonresident and the claim arose from a settlement agreement in a dissolution case that was litigated elsewhere. And because the court doubted whether it had jurisdiction over Montoya, it gave SBV an adequate opportunity to assert facts establishing that jurisdiction existed. We see nothing in the court's decision that was based upon reasons that were untenable or unreasonable, and its action was not clearly against justice or conscience, reason, and evidence.

We will consider the merits of the personal jurisdiction question in the next section, where we review the court's dismissal of the action de novo.

### No Error in Dismissal

SBV's final argument is that the court erred in dismissing the action, because the complaint and the evidence established that the court had personal jurisdiction over Montoya.

[20,21] We begin by setting forth general principles of personal jurisdiction. Nebraska's long-arm statute[34] extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits.[35] Thus, if a Nebraska court's exercise of personal jurisdiction would comport with the Due Process

---

[34] See Neb. Rev. Stat. § 25-536 (Reissue 2016).
[35] *Yeransian v. Willkie Farr*, 305 Neb. 693, 942 N.W.2d 226 (2020).

Clause of the 14th Amendment, it is authorized by the long-arm statute.[36]

[22-24] However, courts' ability to validly exercise personal jurisdiction is not without limit. The Due Process Clause of the 14th Amendment to the U.S. Constitution bars a court from exercising personal jurisdiction over an out-of-state defendant, served with process outside the state, unless that defendant has sufficient ties to the forum state.[37] The constitutional touchstone for personal jurisdiction over a nonresident is whether the defendant purposefully established minimum contacts in the forum state.[38] The minimum contacts requirement protects the defendant against litigating in a distant or inconvenient forum and ensures that states do not exceed the limits imposed by their status as coequal sovereigns in a federal system.[39]

[25] There are two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.[40] SBV conceded that Nebraska may not exercise general jurisdiction over Montoya. Our focus is on specific jurisdiction.

[26-28] To be subject to specific personal jurisdiction of a state, a nonresident defendant must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum state, and the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum.[41] The benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled

---

[36] See *Hand Cut Steaks Acquisitions v. Lone Star Steakhouse*, 298 Neb. 705, 905 N.W.2d 644 (2018).

[37] *Id.*

[38] *Griffith v. LG Chem America, supra* note 9.

[39] *Id.*

[40] *Id.*

[41] See *id.*

into court there.[42] The analysis is not simply mechanical or quantitative, but requires that a court consider the quality and nature of the defendant's activities to ascertain whether the defendant has the necessary minimum contacts with the forum to satisfy due process.[43]

[29-31] For specific personal jurisdiction, there must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation.[44] We have said that unilateral activity of a plaintiff who claims some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.[45] And while mail and telephone communications sent by a defendant into a forum may count toward the minimum contacts that support jurisdiction,[46] the mere use of interstate facilities, such as telephones and mail, does not, in and of itself, provide the necessary contacts for personal jurisdiction.[47]

In light of the above principles, we see no error in the court's determination that SBV failed to make a prima facie showing of personal jurisdiction in Nebraska. Nothing set forth in the complaint or the affidavits was tantamount to proof that Montoya had minimum contacts here.

Viewing the facts in the light most favorable to SBV, Montoya agreed to make payments to an office in this state for attorney fees incurred by his ex-wife in an out-of-state divorce action. He never made the payments. After limited communication with SBV, Montoya stopped responding to SBV's repeated demands for payment. And while he left a

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Diversified Telecom Servs. v. Clevinger*, 268 Neb. 388, 683 N.W.2d 338 (2004).

[47] See *Kugler Co. v. Growth Products Ltd.*, 265 Neb. 505, 658 N.W.2d 40 (2003).

voicemail on a telephone number with a Nebraska area code, it is unclear whether the recipient was in Nebraska at that time. Montoya spoke over the telephone with SBV at least two or three times. His divorce counsel also exchanged limited communications with SBV regarding the payments owed.

Although relevant to a determination whether personal jurisdiction existed, the limited communications, standing alone, do not establish minimum contacts. Because SBV failed to meet its burden to make a prima facie showing of personal jurisdiction, the district court did not acquire jurisdiction over Montoya. It did not err in dismissing the case on that basis.

Before concluding, we note that the federal Fair Debt Collection Practices Act[48] dictates a venue requirement for suits to collect certain consumer debts.[49] Because the court below did not consider that statute, neither do we.

## CONCLUSION

As set forth in the analysis, we conclude the following:

• An objection to personal jurisdiction is not waived by default when a nonresident fails to respond to process served out of state and does not appear.

• A trial court may raise personal jurisdiction on its own motion when deciding whether to enter a default judgment because the defendant has failed to appear.

• Before resolving a personal jurisdiction question and declining to enter a default judgment, a court must first give the plaintiff an adequate opportunity to assert facts establishing the court's jurisdiction over the defendant.

Here, the district court did not abuse its discretion in overruling the motion for default judgment. SBV failed to establish a prima facie showing of personal jurisdiction over Montoya. The court did not err in dismissing SBV's complaint. We affirm.

AFFIRMED.

---

[48] See 15 U.S.C. §§ 1692 to 1692p (2018).

[49] See 15 U.S.C. § 1692i.